THOMAS H. MILLER, Appellant, v. MISSOURI STATE LIFE INSURANCE COMPANY, Respondent.

**Kansas City Court of Appeals, May 22, 1916.**

1. **INSURANCE: Contracts: Fraud: Equity: Cancellation.** In a suit at law, upon a new insurance policy, obtained in exchange for an old one, plaintiff cannot demand all the benefits flowing from the new policy while at the same time repudiating one of the essential basic, component parts of the new policy and without which it would not have been entered into. One cannot appropriate the benefits of a contract and at the same time deny its obligations.

2. ————: ————: ————: ————: ————. The case of Green v. Security Mutual Life Ins. Co., 159 Mo. App. 277, does not hold that where one exchanged an old policy for a new one, he could have stood on the new policy and yet repudiate a certificate of loan which was an essential part thereof. The portion of the opinion in the Green case, quoted in the original opinion herein was stated to show that Green was not chargeable with laches or delay in bringing his suit to cancel the new policy and reinstate the old.

Appeal from Johnson Circuit Court.—*Hon. Sam'l Davis,* Judge.

AFFIRMED.

*Nick M. Bradley* and *M. D. Aber* for appellant.

*Jones, Hocker, Hawes & Angert* and *J. W. Suddath & Son* for respondent.

JOHNSON, J.—This is an action at law begun January 8, 1914, to recover the cash value of a policy of life insurance issued to plaintiff. The petition alleges that "on the 11th day of August, 1903, defendant issued and delivered to this plaintiff, its certain policy obligation or contract numbered 11774, which was duly executed, and registered in the office of the Superintendent of Insurance of the State of Missouri on August 12,

1903, by which said policy or contract it promised and agreed, for a consideration, well and truly to pay or cause to be paid to a beneficiary therein named, the sum of two thousand dollars at the death of this plaintiff with other provisions for the payment of increased amounts in the event such death occurred at stated periods prior to the 1st day of August, 1913.

"And by the terms of said policy or contract it was further promised and agreed by defendant that if this plaintiff were alive and said policy or contract had been kept in full force by the payment of all premiums to the first day of August, 1913, the defendant would pay to the insured, this plaintiff, or his assigns, the surplus accumulations then apportioned to said policy by defendant to the credit thereof, and that if plaintiff so elected, he should also at said date have the option to draw the entire cash value of said policy or contract, which it was agreed by defendant should be the sum of twelve hundred and ninety-six dollars ($1296) together with such surplus accumulations. . . . That on said 1st day of August, the said surplus accumulations apportionable to said policy contract amounted to the sum of three hundred and sixty-four dollars and fifty-eight cents ($364.58), which sum was by the defendant then duly ascertained, determined upon and apportioned to the credit of said policy.

"That on said 1st day of August, 1913, this plaintiff, in accordance with the provisions of said policy contract, and exercising the right therein given him, elected to take said cash surrender value and said surplus accumulations, amounting to the sum of sixteen hundred and sixty dollars and fifty-eight cents, and duly advised and notified the defendant thereof," and prays judgment against defendant "for the amount of said cash surrender value, together with the amount of said surplus accumulations, making a total of sixteen hundred and sixty-eight dollars and fifty-eight cents, with interest thereon from August 1, 1913, with damages for said vexatious refusal to pay, amounting to one hundred and sixty-six dollars and three hundred dollars attorneys' fees."

The answer admits the execution and delivery of the policy and that, by its terms, defendant agreed "that if plaintiff was alive and the policy had been kept in full force by the payment of all premiums to August 1, 1913, defendant would pay to the plaintiff herein, if he so elected, or to his assigns, the surplus accumulations then apportioned to said policy by the defendant, and if the plaintiff so elected he should also at that date have, in addition, to said surplus accumulations as aforesaid, the option of drawing the entire cash value of said policy or contract, which was agreed by defendant in said contract should be the sum of $1296; admits that on August 1, 1913, the surplus accumulations apportionable to the policy sued on herein amounted to $364.58; admits that on or about August 1, 1913, plaintiff, in accordance with the conditions of said contract elected to take the cash surrender value and surplus accumulations and demanded of the defendant the sum of $1660.58, which defendant admits it refused to pay."

In reduction of this conceded liability of $1660.58 which matured August 1, 1913, the answer pleads an indebtedness from plaintiff to defendant of $1206.46 upon a certificate of loan, signed by plaintiff, and delivered to defendant on the date of the application which provided for a lien on the policy to secure the payment of a loan of $754.06, which the certificate recites was made on that date by defendant to plaintiff and which plaintiff agreed to repay with simple interest at six per cent. per annum. It is alleged that "after deducting the said amount from the guaranteed cash value and surplus accuumlations of said policy on August 1, 1913, that is from the sum of $1660.58, the plaintiff was entitled to the sum of $454.12, which amount defendant offered to pay plaintiff and is still ready and willing to pay plaintiff, and defendant admits its liability to plaintiff for said sum of $454.12."

The reply, under oath, denies the execution of the certificate of loan and pleads facts which, if true, show that the execution of the certificate by plaintiff was procured by fraud.

The jury, in obedience to a peremptory instruction returned a verdict for plaintiff for the admitted liability of $454.12, judgment was rendered accordingly, and plaintiff appealed.

The peremptory instruction was given on the theory that plaintiff, on August 1, 1913, was indebted to defendant upon the certificate of loan and that the amount of that indebtedness should be deducted from the conceded value of the policy on that date. The position of plaintiff is that the policy and certificate of loan were independent contracts and that he is entitled to stand on the policy in an action at law for the enforcement of a benefit it conferred upon him and to repudiate the obligation the certificate purports to lay upon him on the ground that his signature to the certificate was procured by false and fraudulent representations and a fraudulent trick.

The material facts of the case chronologically stated are as follows: On May 31, 1893, plaintiff made written application to the Safety Fund Life Association of Monroe City, Mo., a life insurance company incorporated in this State on the assessment plan, for a policy of $2000 on his life payable in the event of his death to his wife, Elizabeth Miller, and agreed that if he should "neglect or refuse to make any of the payments at the place and within the time which they are required to be made by the certificate of membership to be issued hereon and the by-laws of the Association, then and in either event, the said contract and certificate of membership shall be null and void and all monies which have been paid shall be forfeited to said Association."

This application was accepted and a "Certificate and Policy of Insurance" was issued to plaintiff who was forty-six years old, which required the Association to pay the beneficiary $2000 within ninety days after proofs "of the death of said member" and provided that quarterly payments of $7.80 should be made by the insured "for the full term of five years beginning with the month of October next" and that "at the end of said term the quarterly payments defined in Provision No. 1 hereof shall be made to the Association at the

place and within the month aforesaid of each and every year during the continuance of this certificate of membership. Provision No. 1 was that "the quarterly payments from and after the expiration of the term of five years herein specified shall include quarterly dues of seventy-five cents on each $1000 insurance carried, and *pro rata* amounts necessary for mortuary purposes, provided: that such *pro rata* amounts shall be sufficient to pay annually not less than five deaths to the one thousand members, and provided further: that if during any one year the total cost of insurance under this certificate exceeds the annual payments shown in the Table of Rates hereto appended, the Safety Fund shall be used to pay such excess."

The certificate contained no reference to the constitution or by-laws of the Association but stated that it was issued "in consideration of the representation, agreements and warranties made in the application herefor." This insurance was continued in force eight years until it was superseded by the policy in suit and during that period plaintiff made all the required quarterly payments of the total sum of $250.30.

It appears that defendant, an old line company, entered into an arrangement with the Safety Fund Life Association to issue policies of its own in exchange for outstanding certificates of the Association and near the end of July, 1903, H. G. Parr, an agent of defendant, called upon plaintiff who was a merchant at Holden, and urged him to surrender his certificate in exchange for a policy of the same amount to be issued by defendant on the "twenty year fifty per cent. Return Premium plan" offering to date the policy back ten years and to give plaintiff the premium rate applicable to the age of forty-four instead of fifty-four, his age at the time. At first plaintiff declined the offer on the ground that he was satisfied with his policy in the Association, but on being assured that the Association could not continue and had been ordered by the State to take up the certificate, plaintiff consulted his attorney and had an interview with the agent in the attorney's office at which the offer of the agent was accepted and the transaction

closed. The agent prepared the necessary papers and submitted them to plaintiff and the attorney who examined and approved them. They were then signed and delivered and the agent departed with those signed by plaintiff. The wife of plaintiff had a certificate for $2000 in the Association of the same date and tenor of that held by plaintiff and a similar exchange of that certificate for a new policy was made at the same time.

The premium on the new policy was to be $101.80 per annum and it is the contention of plaintiff that his certificate in the Association, which he was required to surrender, was accepted at the same value the new policy would have had at that time if it had been issued ten years before and plaintiff had paid premiums during that period in the total amount of $1018. On the other hand defendant's position is that the old certificate being issued by an assessment company had no value and that the agreement with plaintiff, as expressed in the written contract, was that his first premium for the new policy should consist of $101.80 for the first year and $754.06, the net cost of the insurance for the past ten years. In other words, defendant was to mature a twenty year policy in ten years, if the regular premiums maturing thereafter were paid, but at the same cost to plaintiff of a policy which had been carried for ten years.

The written application signed by plaintiff was for "an insurance on my life of $2000 on the Twenty Pay Life fifty per cent. R. P. plan premium to be paid annually," and "premiums to be fully paid in ten years." It stated that the applicant was born April 20, 1849, and "desires policy to be issued as of age forty-four and that "in consideration of the issuance of the policy applied for I hereby surrender to said company all right, title and interest in and to a certificate of membership No. 1943 issued to me by the said company under the name and style of the Safety Fund Life Association and I agree that in any distribution of surplus accumulations or apportionment of dividends the principles and methods adopted by the company for the apportionment and determination of the amount equita-

bly belonging to any policy issued on this application shall be conclusive on the insured and upon all parties having or claiming any interest thereunder."

At the same time plaintiff signed the certificate of loan in controversy, which was as follows: "This Certifies, That the Missouri State Life Insurance Company, Home Office, St. Louis, Missouri, has loaned on the sole security of Policy No. 11774 the sum of Seven Hundred Fifty-four and 6/100 Dollars, which with any additional loan, shall be a lien on said policy until paid; simple interest at the rate of six per cent. per annum to be added thereto until the end of the accumulation period of said policy, at which time the profits accruing to it shall be used toward the payment of said loan, and any excess paid in cash or used as set forth in the policy, at the option of the insured. Should the profits not fully pay said loan or loans, the amount remaining unpaid at that time may be continued as a loan, interest as aforesaid and the dividends accruing on the policy to be thereafter applied to the payment of said loan. In event of my death or failure to make any payment when due to said Company before said loan is fully paid, the amount remaining unpaid shall become due and be deducted from the amount payable under said policy.

Dated at Holden, Aug. 1, 1903.

THOS. H. MILLER,

Witness: H. G. PARR.                    The Insured."

Plaintiff also executed and delivered to the agent his three promissory notes for $50 each on account of the first year's premium and gave his check for the remainder of that premium. At the same time, though the instrument bears the earlier date of July 28, 1903, the agent executed and delivered to plaintiff the following receipt:

"Transfer Department. Dated at Holden, July 28, 1903. Amount of Policy, $2000.      Annual Premium, $101.80.

Received from Thos. H. Miller the premium above specified, together with Policy No. 1943 issued by the Safety Fund Life Association, to be exchanged for a policy to be issued by the Missouri State Life Insur

ance Company, of St. Louis, Mo. It is expressly under-
stood that the surrendered policy shall remain in full
force and effect until the issuance of the new policy,
unless previously terminated by failure to pay the pre-
mium thereon when due.

H. G. Parr, Mgr. Agent.''

Similar papers were executed for the exchange of
Mrs. Miller's certificate. The entire business was trans-
acted at the meeting in the office of the attorney of
plaintiff and all of the papers were examined and ap-
proved by plaintiff and his attorney with the exception,
so plaintiff states, of the certificates of loan. As to
those documents the agent testified that in each case the
form for the certificate of loan was printed on a sheet
with, and underneath, the application; that plaintiff
signed his name below the application and then below
the certificate of loan and that the sheet containing both
documents was sent to the home office. This statement
is corroborated by the officers at the home office, who
testified that, as was usually done, the certificate was
detached from the application after its reception from
the agent and was placed with the bills receivable, the
applications being kept in a separate place.

This is contradicted by plaintiff and his attorney
who testified that nothing but the application was
printed on that sheet and that no certificates of loan
were submitted to them, nor was any mention made of
such documents. Without going into details we find
that the evidence of plaintiff tends to show that the
agent did not disclose that plaintiff would be required
to pay $754.06 on account of the first premium, in addi-
tion to the current premium for the first year of $101.80,
and that the signatures of plaintiff to the certificates of
loan were procured through a sleight-of-hand manipu-
lation which deceived both plaintiff and his lawyer. Of
course this is contradicted by defendant's witnesses but
for the purposes of the discussion of the peremptory
instruction given by the court, we must regard the fact
as proved that plaintiff was led by an artful trick into
signing the certificates.

The application was accepted and the policy in suit was issued and delivered to plaintiff. As described by defendant's actuary "it is a limited payment whole life policy with guaranteed additions payable in addition to the face of the policy and equal to the amount of the considerations stipulated in the contract and paid by the insured should he die during the premium paying period. His is what is commonly referred to as a twenty payment fifty per cent. return premium policy, except there is a little variation from that, instead of fifty per cent. of the premiums which would have been paid during the first ten years, the amount of the lien is substituted."

The evidence of defendant established beyond question that the admitted value of the policy on the date of the expiration of the premium paying period could be achieved only by the payment of the premium evidenced by the loan certificate and that without such payment the value of the policy necessarily would be correspondingly lessened.

The policy began with the recitation that "in consideration of the payment in advance of eight hundred fifty-five and 86/100 dollars, being the premium for one year's insurance (including the advance reserve hereon set apart to the credit of this policy) and of the annual payment of one hundred one and 80/100 dollars, on or before the first day of August in every year thereafter" etc. (Note the first premium of $855.86 consisted of $101.80, first year's premium, and $754.06 "Advance Reserve.") On the second page, under the title "Special Advantage, Benefits and Provisions" appears the further recital: "This insurance is granted as of date August 1, 1893, in consideration of the surrender and cancellation of Policy No. 1943 heretofore issued under the name and style of the Safety Fund Life Association and of the application for this policy, both of which applications are hereby made a part of this contract."

The policy provided: "If the insured be living and the policy has been kept in full force by the payment of all premiums to the first day of August, 1913, the Com-

194 M. A.—18

pany will pay the insured the surplus accumulations then apportioned to the credit hereof, and this policy . . . may be surrendered. . . . under one of the following options: (1) Draw the entire cash value (consisting of guaranteed cash value of $1296, together with the surplus accumulations.)''

Plaintiff received and retained this policy and made ten yearly payments of $101.80 each, or a total of $1018.00. He testified that the first information he received of the lien claimed by defendant was in a letter from defendant dated June 28, 1913. Defendant refused to settle in accordance with plaintiff's demand for the full cash value of the policy and offered settlement of the net cash value with the amount of the lien deducted. The offer was refused and this suit followed.

Plaintiff argues that he was entitled to go to the jury on the issue that the alleged certificate of loan was procured by fraud of the agent of defendant and that if that issue were decided in his favor he would be entitled to recover the full cash value of the policy undiminished by the lien claimed by defendant under the certificate of loan. His theory is that he may stand upon the policy and repudiate the certificate for the reason that the two instruments appear, by their terms to be divisible and independent contracts; that the terms of the policy as explained by parol evidence express a mutual agreement of the parties that the surrender of the old certificate issued by the Association was to be accepted by defendant in payment of all of the first premium of $855.86 except the sum of $101.80 which plaintiff paid by his check and notes, and that the surrender of that old certificate was a sufficient consideration in law for that agreement, since that certificate could not be regarded as a contract for assessment insurance but as a contract for old line insurance which had a reserve value.

The last branch of this argument shall be the first to receive our attention.

The certificate or policy issued to plaintiff by the Association provided for the payment of fixed quarterly premiums and contained no provision for the payment

of death benefits from the proceeds of assessments collected from the members. As is said in Jacobs v. Life Association, 146 Mo. 1. c. 538, the primary and controlling principle of the statute relating to insurance on the assessment plan (Sec. 6950, et seq., R. S. 1909) "is that the benefit is to be paid out of a fund raised by assessment upon other persons holding similar contracts, by which they are made liable for the payment of such assessments. No scheme of life insurance can come within this principle and become insurance upon the assessment plan unless somewhere along the line of its operations provision is made for such assessment and liability for its payment created."

In Elliott v. Life Ins. Co., 163 Mo. 132, the policy provided certain fixed payments to be made by the assured but contained a safety clause that "in case the death rate ever exceeds our estimated rates the association will pay for the deficiency from the emergency or reserve fund until such fund is exhausted, after which an additional premium may be levied *pro rata* by the executive board, to meet such deficiency."

The court held this provision brought the policy within the meaning of section 5860, Revised Statutes 1889 (now 6950, R. S. 1909) which provides that if "the payment of the benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, it shall be deemed a contract of insurance upon the assessment plan."

A contract issued by an assessment company may provide for fixed payments but if by express provision, as in the case just considered, or by reference to by-laws, it makes provision for the payment of death benefits by the levy and collection of assessments in the contingency that the death rate shall exceed the fund derived from the collection of the fixed payments, it must be treated as insurance on the assessment plan.

In Elliott v. Safety Fund Life Association, 76 Mo. App. 562, we had before us a certificate issued by the same company and in all respects similar to the certificate under consideration, and, as in the present case, the defendant introduced sections of its by-laws which

provided for the levy and collection of assessments, should the fixed payments prove inadequate for the payment of death benefits. We held that the by-laws not being referred to in the policy were not made a part of the contract of insurance and that the contract, as expressed by the policy was one of old line and not assessment insurance.

Counsel for defendant attempt to draw a legal distinction between that case and this from the fact that it does not appear in that case that the application of the insured was in evidence while here the application of plaintiff was introduced in evidence, is referred to in the policy and contains the agreement that "if I shall omit, neglect or refuse to make any of the payments at the place and within the time in which they are required to be made by the certificate of membership to be issued hereon, and the by-laws of this association, then and in either event the said contract and certificate of membership shall be null and void."

We may concede for argument that in this round-about manner the by-laws mentioned in the application were made a part of the contract of insurance, but we do not share the view of counsel for defendant that by-laws not mentioned or even suggested in this reference were brought into the contract. The only by-laws referred to were those relating to the time and place for the making of the fixed quarterly payments and the application is silent about the by-laws which made provision for the levy and collection of assessments. There is no special distinction between this case and the Elliott case, and we must hold, as we did in that case, that the insurance in question was on the old line and not on the assessment plan.

But if old line insurance, it is impossible to conceive under the facts disclosed that, at the time of its surrender to defendant, this certificate of insurance had a reserve value which could serve as a sufficient consideration for the payment of premiums on the new policy amounting to $754.06. The quarterly payments plaintiff had made during the eight years the certificate had been in force amounted only to $250.30, and to say

that these payments were sufficient to defray the cost of the insurance for that period and to impart a reserve value to the policy of $754.06, would be an absurdity. Counsel for plaintiff in their reply brief seem to realize this and present the view that the surrender of the certificate was a valuable consideration for the reason, not that it had a reserve value, but that it belonged to a class of contracts on which the Association was losing money and would continue to lose to an extent which made it impossible for it to continue in business. It appears that the present defendant was organized and incorporated to succeed that Association and to relieve it of the burden of its disastrous contractual obligations to certificate holders, and, therefore, it is argued, that the surrender by plaintiff of his right to continue the old insurance was a detriment to him the extent of which might reasonably have been estimated by defendant at the sum of $754.06. The well known rule is invoked that a benefit to the promisor is not necessary to afford a consideration for the promise, since a detriment to the promisee is equally as efficacious. [Fuller v. Dry Goods Co., decided by this court at this term; Halsa v. Halsa, 8 Mo. 303; Williams v. Jensen, 75 Mo. 681; German v. Gilbert, 83 Mo. App. 411; Brannock v. Magoon, 141 Mo. App. l. c. 320; Houck v. Frisbee, 66 Mo. App. 16; Lamp Co. v. Mfg. Co., 64 Mo. App. 115.]

We accept this argument as sound and observe that it relieves plaintiff from the imputation of acting inequitably in seeking to force defendant to give him ten years insurance and $1660.58 in cash on total premiums paid in by him amounting only to $1018. If, in addition to this outlay, he surrendered a right, estimated by him and defendant to be worth $754.06, he has paid the full consideration. And further in approval of the position of plaintiff we are willing to concede for argument that since the certificate of loan shows upon its face merely that a straight-out loan was made upon the policy, and as we held in Green v. Insurance Co., 159 Mo. App. l. c. 293, in a somewhat similar case, necessarily carried the implication that it "must have been executed not in

connection with or as a foundation of the new policy
but after it came into existence as an independent con-
tract between the parties,'' the policy and certificate
of loan should be regarded as divisible, independent
contracts and not as parts of a single transaction. On
this hypothesis fraud which would vitiate the certificate
of loan would not necessarily taint the policy and as
was held in the Green case, plaintiff would have the
right to stand on the policy and repudiate the certificate.

The general rule is that if any part of a single
transaction, whether it be evidenced by one or a dozen
separate written instruments, be tainted with fraud, the
entire transaction becomes infected and the injured
party, upon the discovery of the fraud must elect either
to accept the whole transaction, or to reject it *in toto*.
The rule is tersely stated in the following quotation
from the case of Bank v. Petrie, 189 U. S. 1. c. 425: "If
the bank relies upon the sale it must take it with the
burden of the fraud. It must adopt the whole transac-
tion or no part of it. It cannot affirm what is for its
advantage and repudiate the rest.'' The conclusion
that the policy and certificate of loan were not parts of
the same transaction seems to be in the face of the
conceded facts that the certificate and application for
the policy were executed contemporaneously, pursuant
to an agreement between the parties, fixing the terms
of the new insurance contract and to rest upon a most
strict construction of the reference in the certificate to
the policy as an existing contract. But as we said
before, we are willing to take plaintiff in the position
of his choice, that there were two separate and distinct
transactions, the first evidenced by the policy and the
last by the certificate.

At this point the similarity between the facts of this
case and of the Green case ceases. In that case the
consideration stated in the policy which the assured
was to give for the insurance did not include the pay-
ment of any other sums than the semi-annual premiums
of $20.08 each. The policy stated that it was issued as
of date October 17, 1893, in consideration of the sur-
render and cancellation of policy No. 7959 and of the

application for this policy, and of the payment in advance on October 17, of $20.08 and of the payment of a like amount on or before the 17th days of October and April in every year thereafter. That recital bespoke a mutual intention of the parties that the surrender of the old policy should pay the back premiums and that the assured would incur no other obligation than that of paying the stated semi-annual premiums. Therefore the certificate of loan which attempted to create an obligation on account of back premiums was inconsistent with the terms of the policy and in the view that it was the product of a subsequent independent transaction we think Judge TRIMBLE was right in holding that it did not affect the consideration of the policy and that Green would have been entitled to stand on the policy and repudiate the certificate of loan.

But in the present case the expressed consideration in the policy "is the payment of $855.86, being the premium for one year's insurance, of the annual payment of $101.80," and "of the surrender and cancellation of policy No. 1943 heretofore issued under the name and style of the Safety Fund Life Association." What was it the policy required of plaintiff in order for him to start in the middle of a twenty year premium term at the rate applicable to an age ten years younger than his age? *First,* he had to pay $855.86 in money; *second,* he had to surrender his old policy, and, *third,* he had to pay yearly premiums of $101.80 each for ten years. These terms conclusively negative the thought that the surrender of the old policy would be accepted in discharge of any part of the first obligation to pay $855.86. In being suffered to take his coveted position of abiding by the policy and of rejecting the loan certificate, plaintiff is met with the embarrassing question, "Point out to us the provisions of the policy—the contract you say is in force—which allow you to discharge your first obligation with your second—to cancel one of your promises with another?" The terms of the policy give no answer to this question, and we do not think this is a case where the rule that a recital of a consideration in a deed or contract is open to explana-

tion by parol evidence, may be applied. That rule obtains only in instances where the expressed consideration in the contract appears in the form of a mere noncontractual recital. Where the language employed in the written instrument bespeaks a mutual intention of the parties to treat the consideration as a contractual subject, the party afterward complaining is no more entitled to alter or vary such stipulation by parol evidence than he would be to change any of the other essential elements of the contract. "It matters not that the expressed consideration be money or some other species of property, the real intention of the parties to be collected from the four corners of the written contract is the test to be applied." [Tate v. Railroad, 131 Mo. App. 107, and authorities cited; Jackson v. Railroad, 54 Mo. App. 636.]

The terms of the policy show beyond question that the consideration plaintiff was to give for the insurance was intended to be stated in a contractual form and plaintiff will not be allowed to assail the contract by evidence of a contemporaneous oral agreement at variance with its expressed terms. With the certificate of loan pronounced void on the ground of fraud in its procurement, plaintiff still must be held, in this action on the policy, to the performance of the conditions therein imposed upon him, and since it appears that he left unpaid $754.06 of the first year's premium, defend- is entitled to offset that sum with interest thereon against its liability to pay the value of the policy. The court took a proper view of the law of the case in giving the peremptory instruction.

It is conceded that error was inadvertently committed against plaintiff in not allowing him interest at six per cent. per annum on the net value of the policy, to-wit, $454.12, from August 1, 1913. But this error does not call for another trial of the case. The judgment will be reversed and the cause remanded with directions to enter judgment for plaintiff for $454.12, together with interest thereon from August 1, 1913, at six per cent. per annum, and costs.

It is so ordered. All concur.

## ON REHEARING.

TRIMBLE, J.—Upon a rehearing granted in the above entitled cause, the case has been reargued and the entire matter fully presented in careful and extensive briefs on both sides.

After again considering the matter we are of the opinion that the conclusion reached in the former opinion is right and that the judgment should be affirmed. There is a vast difference between this and the case of Green v. Security Mutual Life Ins. Co., 159 Mo. App. 277. That was a suit in equity to cancel the new policy and to reinstate the old. The present case is a suit at law on the new policy in which the plaintiff is demanding all of the benefits flowing therefrom while at the same time he is repudiating one of the essential, basic, component parts of it and without which the new policy would not have been entered into. All of which is conclusively shown not only in the papers themselves but in the evidence adduced in the case. It is elementary that one cannot appropriate the benefits of a contract and at the same time deny its obligations. If the plaintiff, through fraud, was led into giving up his old policy for the new, then such fraud, when established, would, under proper conditions, entitle plaintiff to cancel the entire new contract and reinstate the old but it would not entitle him to affirm the new while at the same time repudiating an obligation on which it is concededly based.

There is one observation in the original opinion in reference to the Green case which seems to require modification. It is said in the original opinion that the Green case held that Green would have been entitled, in the first suit he brought, to stand on the policy and yet repudiate the certificate of loan. The Green case does not so hold. The portion of the opinion in the Green case, quoted in the original opinion herein, was stated in showing that Green was not chargeable with laches or delay in bringing suit, since, *so far as he knew,* there was nothing anywhere to notify him of the fact that the new policy and the certificate of loan were parts

of the same contract. It also went to answer the charge that Green, upon discovery of the certificate of loan, did not at once rescind *in toto* but elected to stand on the new contract and assert his rights thereunder. At page 265 of the Green case it is said that until the end of Green's first suit, the "plaintiffs were not required to relinquish their rights under the new policy since, *so far as they knew,* its force as a contractual obligation had nothing to do with the certificate of loan."

The former opinion is adhered to in so far as concerns the approval of the trial court's view of the case, and also with reference to the reversal of the judgment and the remanding of the cause with directions to enter judgment for plaintiff for $454.12 with interest from August 1, 1913. But with reference to costs, inasmuch as the record shows that defendant, before trial, offered to allow judgment to be taken for more than the amount now found to be due, the defendant is not chargeable with any costs accruing after the date of the filing of said offer, to-wit, February 24, 1914. [Sec. 1965, R. S. 1909.]

The other judges concur.