ARCHBALD, District. Judge.*
If the case turned on the question of infringement, there would be no serious difficulty in disposing of it. The defendants are manufacturing two kinds of displacement or nutating meters, each of which offends against one or the other of the patents in suit, if valid. In one the disk of the piston, the inclosing case of the meter chamber, and the seat of the ball, above as well as below, are all made of brass, while the ball itself is of rubber. This escapes the second patent, which calls for the case, ball, and disk to be of metal, and the seat of the ball of a' nonmetailic material; but it *83 comes within the terms of the first and second claims of the first patent, which in a general way may be said to cover the combination in which the disk and opposing case walls are made of similar materials, and the ball and ball bearings of those that are dissimilar. This is not exact, but it is sufficient for the present purpose. It is not necessary to consider whether, according to the position taken by counsel in the course of the patent through the Patent Office the “seats” and “bearings” spoken of in these claims are to be taken as including the separate bearing parts above and below, which go to make up the whole socket, or are to be confined to the lower half, on which the ball more particularly rests and bears. I am satisfied that the former is the proper construction ; but it is of little moment, for, even if it be accepted, all parts of the seat in this class of the defendants’ meters are of metal, and therefore fall directly within the patent, however construed. The other class of meters manufactured by the defendants follow the Thomson patent, No. 568,642, and have a case, disk, and ball all of metal, and a special seat for the ball, made either of plugs of a graphite compound known as “metalline” set in a bed of metal, or of concentric rings of the same held in place by an inclosing metal shell. Whichever combination is used, there can be little doubt as to the seat, being substantially composed of a nonmetallic material, the graphite being the real as well as the intended bearing, and the metal in which it is incased designed to simply keep it in position. The experts on. both sides agree that, as so constituted, these are nonmetallic bearings, and, as that is also what is actually claimed for them in the Thomson patent, we are safe in concluding that they bear that character. This brings them within the second, if not the first, patent, and establishes as to these meters also the infringement charged. It is to be noted that in the second patent the word “seat” is used in the singular, and is, therefore, satisfied with the lower half made of a nonmetallic material. The attempt to tie this patent up to the contents of the file wrapper because it was split off from the application which is the basis of both, and thereby have it read “seats,” in the plural, with the corresponding construction imposed upon it, cannot be sustained. So far- as this patent is concerned, it stands to that extent by itself on its own terms, which are unambiguous.
But the real question in the case is whether the patents in suit are valid, and this requires a somewhat critical examination of them, and what they undertake to cover. The disk of a nutating meter, as first set in place, is given a slight clearance at the rim sufficient to avoid contact with the inclosing case without resultant leakage. But when the piston loses its initial poise by reason of the wear of the ball in its socket, as there is a natural radial thrust by the water in the direction of the outlet port, the disk is liable to be forced into sudden contact at that point with the walls of the case, binding and breaking it* because of its having to take, on the instant, the entire weight of the water head. This is a well-recognized danger, and the patents in suit —notwithstanding some inconsistencies to be found in the record* which I will not stop to discuss—must be regarded as distinctly designed to meet and obviate it. This is what was claimed for them on. their passage through the Patent Office, and it sufficiently, although *84 more obscurely, appears in the specifications themselves. The method devised by the inventor to remedy the difficulty was not, as might be supposed, by endeavoring to decrease the frictional wear at the periphery of the disk (as is done, for instance, in the Thomson meter, already referred to, by the use of thrust rollers), but, on the contrary, by augmenting it; at the same time providing that the wear at the ball shall be reduced to a minimum, so that with the one going on faster than the other, the original clearance will be maintained. It is stoutly contended by the defendants that this arrangement produces no such practical or beneficial result, but, notwithstanding what is said of it «on that side, I am persuaded that it is theoretically correct, and calculated to perform the function claimed for it. The criticism which is so made of it serves to show that the device was by no means obvious, and that it required a certain amount of inventive ingenuity to appreciate and apply it. It is not with this part of the case that I experience any difficulty, but rather with the means employed to realize the invention, and the generalty of the claims formulated to express it.
The claims particularly relied upon in the first patent are as follows:
“(1) In a water meter, a nutating piston, composed of ball and disk combined with a ease provided with seats for the piston ball, the disk of the piston and the spherical walls of the case being composed of substances having a larger coefficient of abrasion than the substances composing the ball of the piston and its seats in the case. (2) In a water meter, the disk of a nutating piston and the opposing case walls, made of similar materials, combined with the ball of said piston and the ball bearings in the case, made of dissimilar materials.”
The single claim of the second patent is much the same:
“In a water meter, the combination of a piston composed of a ball and disk, both made of metal, with a case made of metal, -and a seat for the ball, made of nonmetallic material.” , ( ____ ■ ...
It cannot but be evident that these claims are very highly and broadly generalized, laying them open to the charge that they attempt to patent a mere result or abstraction, rather than a specified means for accomplishing it, which is alone patentable. O'Reilly v. Morse, 15 How. 62, 14 L. Ed. 601. In the first claim the inventor practically monopolizes every means, whether structural or material, by which a relatively greater wear is secured at the rim than goes on at the center; while the second is not far behind, embracing, as it does, the use of similar, but unspecified, materials at the one place as against dissimilar and unspecified materials at the other. The second patent may be somewhat less broad, but not much so; metal against metal being specified for the one place, and.metal against a nonmetallic material for the other. The extended character of these claims is shown by the position taken with regard to them in the evidence. Dr. Morton gives it as his opinion, for instance, that the first patent would be realized wherever, by any means, structural or otherwise, less frictional wear is secured at the seat of the ball than goes on at the rim of the disk. This, as he says, would include the previous Thomson (18913 tapering disk, or the subsequent Nash (1894) knife edge, in the latter of which (a hard rubber disk in a metallic case being retained on account of its lightness) the necessary abrasion is secured by a re *85 duction of area at the rim, as well as by a pointing or sharpening of it; and would even extend to a case in which the abrasion at the ball and seat was rendered less by a permanent lubrication of these parts by a properly maintained film of oil or graphite. In line with this, infringement of the second patent is made out, as we have seen, by the mere introduction in an ordinary all-metal case having an all-metal disk of any well-known and constantly used nonmetallic antifrictional bearing. The patent law was not designed to favor, and does not support, any such sweeping generalities. An inventor is entitled to the benefit of any useful discovery which he may make, be it product, process, or structure, but he must put it into concrete form. The furthest that the courts have gone in upholding as patentable the mere use of materials to produce a desired result is in the case of Smith v. Goodyear Dental Company, 93 U. S. 486, 23 L. Ed. 952, affirmed in Goodyear Dental Company v. Davis, 102 U. S. 222, 26 L. Ed. 149, where a patent for a dental plate of vulcanized rubber for holding artificial teeth is sustained ; but even there not only was the material of a composite character, but it was closely identified with the process devised by the inventor, in which it was beneficially employed. There was no claim, as here, for materials, unlimited and undefined, where the only thing specified is that they combine to perform a certain function. This condemns, as it seems to me, not only the first two claims of the first patent, but the single claim of the second patent as well.
But there are other grounds on which the latter must also fail. All that is there advanced, as will be seen by an analysis of it, is the use of a nonmetallic seat or bearing in a case and disk of metal, each admittedly old. The assembling of parts of this established character certainly realizes all the advantages claimed for the invention, as the position taken with regard to the meters manufactured according to the Thomson patent and the testimony of Dr. Morton, already referred to, abundantly show. Was the inventor entitled to this, in view of the prior art? It hardly needs a reference to previous patents to prove that he was not, but it will not be unprofitable to examine a few of them. Thus, as suggested in the Davies (1888), the inclosing meter chamber including the seat of the ball is to be made of metal, while the disk is of sheet metal, or, where the temperature of the liquid to be measured is not high, of vulcanite, compressed paper, or other like materials. In the Nash, of the same year, while metal is recognized as suitable for the inner metal chamber, hard rubber is preferred, and the piston is preferably to be of that material also, with metal on the interior to strengthen it; and for the bearing of the ball an adjustable plug of lignum-vitse is provided, by means of which the wear, if any, at that- point, is to be taken up by driving it upwards with a blow. When hot water is to be measured, all the parts liable to injury are to be of some material that will not be affected, such as brass. In the Lambert (1891) we have a combined metal and rubber disk, designed for that very use; and in the Thomson, of the same year, a very similar one. It will thus be seen that metals and nonmetallic substances of the character specified for one or the other of the different parts of a nutating meter have been freely suggested and employed by other prior inventors, until there is hardly a combination of them which *86 •could be devised that would be in any respect new. We have no further to go than the patent to this same inventor just referred to to exemplify this. If any one licensed by Mr. Nash under that patent, for instance, should construct a meter with a metal case and a metal disk and ball (which would be in entire conformity with it, however much hard rubber is said to be preferred), and should then insert, as the patent provides, a lignum-vitse seat, it is plain that he would fall within the exact terms of the second patent, realizing, to a certain extent at least, the function claimed for it. If, varying this, the case and piston were made of rubber (which, as I have pointed out, the inventor prefers), with a lignum-vitae seat, again we should also have the combination embodied in the first patent, thus anticipating it also, and establishing an additional ground for its invalidity. I do not lose sight, in this connection, of the fact that the device in suit is supposed to accomplish automatically what is only to be brought about in the case of the lignum-vitae plug by direct effort, and that the one would be a material advance upon the other. But that is not the point. The result may be to that extent new, but the means employed for producing it by a combination of metallic and nonmetallic substances following "the terms of the second patent, or of similar and dissimilar materials, or those having different coefficients of abrasion according to the first patent, are not; and, if so, both are without novelty, and cannot be sustained. The inventor must be regarded as having merely discovered a new property, which, however beneficial, is not of itself patentable. Neither am I unmindful that an accidental and unnoted use is not an anticipation (Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279); but we have very much more than that here. The very combination of materials suggested in the patent is to be found in the prior art, not as a matter of accident or undesign, but definitely and distinctly indicated and provided for. The particular purpose now contemplated may not have been the same, but that does not matter. The same character of combination cannot be reproduced and patented simply on the strength of a new result. On this whole subject I •cannot help being impressed with the idea that the patentee, in the attempt to broaden his claims, has refined them away to a mere theory, which, in the ordinary form of an all-metal disk and ball in an all-metal case, the simple introduction of a permanent lubricant at the ball realizes. As already pointed out, this is conceded by Dr. Morton, and he could not well do otherwise. Counsel for complainants evidently appreciate the dilemma, and endeavor to avoid it by the argument to be found in their reply brief that what the inventor did was not to put in an antifrictional bearing at the seat, which was admittedly in general use, but to take out an antifrictional bearing at the rim, which was just the opposite. Unfortunately, however, this position, if it would avail the complainants anything, cannot be sustained. However much it may express the real spirit of the invention, according to the claims which the inventor has formulated, all that he undertook to do was to provide for a relatively greater wear at the rim than at the socket, either (as he declares) by means of substances having different coefficients of abrasion at the two places, or by making use of the well-known frictional principle that similar substances, such *87 as metal against metal, will wear faster than dissimilar ones, such as metal against a nonmetallic surface, without in either case specifying any particular materials or substances, or any combination of them, not already in use. As so expressed, the invention, however meritorious, cannot be sustained. The most specific form in which it is stated is anticipated by other similar structural combinations already existing in the art, and in its broader forms it is a mere abstraction, not within the protection of the patent law.
Let a decree be drawn dismissing the bill, with costs.

 Specially assigned.

 4. See Patents, vol. 38, Cent. Dig. §§ 31, 47.