THOMAS FICKLIN, Respondent, v. MISSOURI STATE LIFE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals November 8, 1920.

1. **LIFE INSURANCE: Assessment Plan: Elements Constituting Assessment Insurance.** Under the provisions of the statute (Sec. 6950, R. S. 1909), where the payment of benefits to accrue to the beneficiary named in an insurance policy is, in any manner, or degree, dependent upon the collection of an assessment upon insured holding similar contracts, the policy is a contract of insurance upon the assessment plan.

2. ———: ———: ———. Where the policy of insurance provides for the accumulation of an emergency fund, for payments of benefits that are dependent upon the collection of assessments from others holding like policies and for the collection of a definite sum to be paid after the expiration of a certain period with the further provision for assessments to be levied *pro rata* upon other members, it meets the requirements of the statute (Art. 3, ch. 61, R. S. 1909), concerning insurance on the assessment plan and the fact that a portion of the premium to be paid is definite does not deprive the policy of its characteristics as an assessment policy.

Appeal from Gentry County Circuit Court.—*Hon. John M. Dawson*, Judge.

(452)

REVERSED.

*J. W. Sullinger,* and *J. W. Peery* for respondent.

*Jourdan, Rassieur & Pierce* for appellant.

BLAND, J.—This is a suit involving a policy of life insurance in the sum of $2000 on the life of plaintiff, issued on March 5, 1894, by the Safety Fund Life Association, which is now the defendant. The suit is one in equity for an accounting and recovery of excess premiums paid by way of assessments in the sum of about $1200, claimed by plaintiff to have been overpaid by him, and for an injunction to prevent a threatened forfeiture of the policy if plaintiff fails to continue to pay similar excess premiums.

The court found in favor of plaintiff; that plaintiff had paid $923.40 in excess premiums and rendered judgment for plaintiff in that sum; enjoined defendant from demanding and collecting a premium in excess of $27.60 per year on said policy, and from forfeiting or canceling the policy for a refusal to pay a higher premium.

The whole controversy revolves around the question as to whether the policy written was an old line policy or an assessment policy. There is no dispute that plaintiff is not entitled to recover if the policy was the latter. The policy provides for the payment of a premium of $6.90 to the association during "the months of January, April, July and October, of each and every year for a term of four years; at the end of said term the quarterly payments defined in Provision No. 1 hereof shall be made to the Association at the place and within the months aforesaid of each and every year during the continuance of this Certificate of Membership." Provision No. 1 reads as follows:

"The quarterly payments from and after the expiration of the term of four years herein specified shall include annual dues of $3 on each $1000 insurance carried, and *pro rata* amounts necessary for mortuary pur-

poses, provided, that such *pro rata* amounts shall be sufficient to pay annually not less than five deaths to the one thousand members, and provided further, that if during any one year the mortality cost exceeds the annual payments shown in the Table of Rates hereto appended, the Safety Fund shall be used to pay such excess.''

The annual payments shown in the table of rates for the age of the insured was the same amount as the annual premium for the first four years.

Provision No. 3 provides for the mailing by the Association during the months of January, April, July and October of each and every year to the insured of ''notice of the quarterly payments herein required.'' Provision No. 4 reads as follows:

''The indemnity under this Certificate shall be paid from the Benefit Fund, which consists of all moneys paid by members not previously transferred to the Safety Fund, except the first payment and the regular annual dues, which may be used for contingent expenses. In the event that there is not sufficient money in the Benefit Fund, then all or any part thereof shall be paid from the Safety Fund.''

We think under the terms of the policy there is no question but that it was an assessment policy within the meaning of article 3, chapter 61, Revised Statutes, 1909, and the parties so construed it. Section 6950 of that statute provides that where the payment of a benefit to accrue to the beneficiary named in the policy is in any manner or degree dependent upon the collection of an assessment upon insured holding similar contracts, the policy shall be deemed a contract of insurance upon the assessment plan. Section 6952 provides that the exact amount shall be specified in the policy to be paid upon each contingency insured against. Section 6954 provides for the accumulation of an emergency fund for the payment of death claims or other benefits provided in the policy. We think that the terms of this policy undoubtedly meet the provisions of the statute.

The policy mentions a definite sum of insurance. It provides for an accumulation of an emergency fund designated as a "benefit fund" and a "safety fund." The provisions of the policy clearly show that the payment of the benefits is dependent upon the collection of an assessment upon, persons holding similar contracts. While after the expiration of four years there is a definite sum to be paid, towit, the sum of $3.00 per year on every $1,000 of insurance, there is a further provision to the effect that assessments shall be levied *pro rata* upon other members. The fact that a portion of the premium to be paid is definite does not deprive the policy of its characteristic as an assessment policy. [Hanford v. Mass. Benefit Ass'n, 122 Mo. 50.]

However, it is strenuously insisted by plaintiff that the policy does not provide for assessments, plaintiff relying upon the cases of Elliott v. Safety Fund Life Assn., 76 Mo. App. 562, and Miller v. Mo. State Life Ins. Co., 194 Mo. App. 265. While the word "assessment" nowhere appears in the policy it is apparent from reading the provisions that assessments are provided for. It refers to "members" and provides for *pro rata* payments "necessary for mortuary purposes" in addition to the fixed premium. Insurance companies exist from premiums or payments made by its policy holders or "members" and the policy speaks of the *pro rata* amounts necessary to pay the death claims. *Pro rata* is defined by Webster to mean "In proportion; proportionately; according to the share, interest, or liability of each." No one can read the policy without coming to the conclusion that the amounts for mortuary purposes were to be raised in part from members to be assessed by the association proportionately, and, therefore, the payment of benefits was in some "manner or degree dependent upon the collection of an assessment upon persons holding similar contracts," as provided by section 6950 of the statute.

Turning to the Articles of Association and by-laws of the Safety Fund Life Association (reference to the

by-laws was made in the application), we find that the company was incorporated under the laws of the state of Missouri as an insurance company on the assessment plan, and its articles provide for an emergency fund as required by Section 6954 and denominated a "benefit fund" and a "safety fund," and that its Board of Directors should levy assessments when required.

It was stated in Kribs v. United Order of Foresters, 191 Mo. App. 524, 549—

"The rule is well established that insurance is to be regarded as on the assessment plan when the payments are not unalterably fixed by the contract, other elements under our statute above pointed out appearing. When such elements are present and the payments to be made are stipulated in a manner so as to destroy their character as unalterable and certain, and to introduce the element of uncertainty by variation, as by levying other and additional assessments in the discretion of the insurer, the assessment feature appears. [Hadel v. Mut. Reserve, 98 Fed. 200; Knott v. Security, etc. Life Ins. Co., 161 Mo. App. 579, 592 ,144 S. W. 178; Moran v. Franklin Life Ins. Co., 161 Mo. App. 140 S. W. 955.]"

It is apparent to us that the contract under consideration clearly comes within the rule laid down in the Kribbs case. In the case of Elliott v. Des Moines Life Ins. Co., 163 Mo. 132, 133, the policy provided that "in case the death rate ever exceeds our estimated rates, the association will pay the deficiency from the emergency or reserve fund until such fund is exhausted, after which an additional premium may be levied *pro rata*, by the executive board, to meet such deficiency." It was held that the policy involved in that case was an assessment policy and we are unable to distinguish that case in principle from the one in the case at bar.

The case of Elliott v. Safety Fund Life Ass'n, supra, cited by plaintiff, does not uphold plaintiff's contention that the policy before us is a general life insurance policy. In that case the insured had the option of continuing to the end the premium definitely fixed for

the first five years, and it was held that this made the policy an old line policy of life insurance. The court discussed a further provision of the policy to the effect that if the insured did not elect to continue the fixed premium at the end of five years, the payments should be quarterly "but will be reduced to the expense element and mortuary requirements, provided, that the total payments made in any one year shall not be less than $14.50, and providtd further that in the event that the total payments required in any one year exceed $29, the safety fund shall be used to pay such excess," and it was held that no provision was made for the collection of premiums to pay the loss of the company by assessment of the various holders of like contracts. It is apparent from the wording of the policy in that case that it did not appear that the amount to be collected from the insured was made to depend upon the collection of an assessment on persons holding similar policies. Nothing was said or intimated about the collection of such premiums from any one except the insured. The wording of that policy is very much different from the one in the case at bar. As we have already said, the latter policy provides for the collection of *pro rata* amounts from the various members of the association. What was said in the case of Miller v. Mo. State Life Ins. Co., supra, extending the holding of the case of Elliott v. Safety Fund Life Association to apply to a policy similar to the one in the case at bar is disapproved.

From what we have said the policy of insurance sued upon was an assessment policy. The trial court was in error in not so holding and the judgment is therefore reversed. All concur.