LEROY M. LEE, Administrator of Estate of LEROY M. LEE, Deceased, v. MISSOURI STATE LIFE INSURANCE COMPANY, Appellant.

Division Two, April 7, 1924.

1. **LIFE INSURANCE: Assessment or Old-Line Policy.** If the contract upon its face clearly indicates that the payments necessary to keep it in force are to be gathered in whole or in part from assessments upon holders of certificates of like character, it is to be classed as insurance upon the assessment plan; if it provides for the payment of fixed premiums at stated intervals without condition, it is to be classed as level-premium or old-line insurance.

2. ———: **Statute: Dependent Upon Assessment.** If the benefit to be paid is "in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts" the contract is by the statute (Sec. 6155, R. S. 1919) declared to be "insurance upon the assessment plan."

3. ———: **Assessment: Shown by Other Words.** It is not material that the word "assessment" was not used in the insurance certificate, if the clauses used therein show an apportionment of the amounts to be paid and make their payment dependent upon specified conditions.

4. ———: ———: **Definite Amount: Variable by Mortuary Losses.** Where the association, organized under the statute upon the assessment plan, by the face of its certificate promised to pay to a

named beneficiary two thousand dollars at the holder's death upon condition that payment of eight dollars be made every three months for five years, "subject to the provisions and requirements stated on the back of this certificate," provisions on the back that "the quarterly payments from and after the expiration of the term of five years herein specified shall include quarterly dues of seventy-five cents on each $1000 insurance carried and *pro rata* amounts necessary for mortuary purposes; provided, that such *pro rata* amounts shall be sufficient to pay annually not less than five deaths to the one thousand members, and provided, further, that if, during any one year, the total cost of insurance exceeds the annual payments shown in the table of rates, hereto appended, the Safety Fund shall be used to pay such excess," and that "the indemnity under this certificate shall be paid from the Benefit Fund, which consists of all moneys paid by members not previously transferred to the Safety Fund," and "in the event that there is not sufficient money in the Benefit Fund, then all or any part thereof shall be paid from the Safety Fund," made the insurance dependent upon variable assessments, and the contract was insurance on the assessment plan; and the member having paid eight dollars per quarter for five years, and thereafter nine dollars per quarter for three years, and the association having subsequently increased the quarterly assessment to $14.16, which was in proportion to the then outstanding mortuary claims, he tendered nine dollars, which was refused, and thereafter made no further payment or tender, his beneficiary cannot recover on the theory that the contract was insurance on the level-premium or old-line plan. [Disapproving Lee v. Safety Fund Life Assn., 238 S. W. 858, and approving Ficklin v. Mo. State Life Ins. Co., 205 Mo. App. 452.]

5. ———: **Benefit Fund.** A provision in the contract that "the indemnity under this certificate shall be paid from the Benefit Fund, which consists of all moneys not previously transferred to the Safety Fund" and "in the event that there is not sufficient money in the Benefit Fund, then all or any part thereof shall be paid from the Safety Fund" means that the indemnity is to be paid from the Benefit Fund arising from moneys paid by members, and that the Benefit Fund is created by assessments upon members, and to be maintained so as to meet varying death losses the size of the assessments must be likewise varied.

6. ———: ———: **As Construed by Parties.** The meaning of a contract may be measured by the conduct of all parties to it, if its terms, when reasonably construed, are in harmony with their conduct. Where the insurance contract provided for the payment of eight dollars per quarter for five years, and quarterly payments of seventy-five cents per month thereafter, and the certificate-holder

paid the eight dollars per quarter for the five years, and thereafter for three years paid nine dollars per quarter, which were the amounts demanded by the association and paid by the member without complaint, the parties by their conduct construed the contract as insurance upon the assessment plan.

7. ———: **Forfeiture: Record Entry.** Articles of association declaring that if a member fails to meet an assessment called for by his insurance certificate within thirty days after the first day of the month in which notice of the assessment is mailed to him, authorize the board of directors of an assessment company, upon the member's failure to make the payment, to forfeit his membership, and an entry of the forfeiture upon the records is not requisite to its effectiveness.

8. ———: **Abandonment.** A failure of a member for a long number of years to disaffirm his expulsion or suspension by the assessment insurance company, and to either pay or tender the assessments made by it or the assessments admitted to be due, must be considered an abandonment of the insurance by him.

Headnotes 1 to 6:  **Life Insurance,** 1, 2, 3 and 5, 25 Cyc. 700; 4, 25 Cyc. 740.  Headnotes 7 and 8:  **Beneficial Associations,** 7 C. J. secs. 61, 68.

Transferred from St. Louis Court of Appeals.

REVERSED.

*Jourdan, Rassieur & Pierce* for appellant.

(1)  The certificate is an assessment policy because it provides that the insured shall be paid out of a benefit fund and a safety fund raised by moneys paid by the members of the association from a *pro rata* assessment on the members for mortuary purposes, and therefore is in some manner or degree dependent upon the collection of an assessment upon persons holding similar contracts. It certainly is not an old-line or level-rate policy. R. S. 1919, sec. 6155; Ficklin v. Mo. State Life Ins. Co., 205 Mo. App. 452; Moran v. Franklin Life Ins. Co., 160 Mo. App. 407; Elliott v. Des Moines Life, 163 Mo. 132, 155; Hanford v. Mass. Benefit Assn., 122 Mo. 50; Williams v. St. Louis Life, 97 Mo. App. 449; Kribs v. United Order of Fores-

ters, 191 Mo. App. 524, 549; Morrow v. National Life
Assn., 184 Mo. App. 308, 315. (2) Failure to pay a
premium or assessment when due forfeits the policy.
Bondurant v. Mo. State Life Ins. Co., 198 S. W. 74; Ash-
brook v Phoenix Mutual Life Ins. Co., 94 Mo. 72; Gater-
mann v. American Life Ins. Co., 1 Mo. App. 300; Pope v.
N. Y. Life Ins. Co., 192 Mo. App. 383; Smoot v. Bankers
Life, 138 Mo. App. 468; Marshall v. Ins. Co., 148 Mo
App. 677. (3) The failure to pay or tender assessments
or premiums upon a life insurance policy of any sort for
a period of fourteen years constitutes an abandonment
of such certificate or policy by the holder thereof. Lavin
v. Grand Lodge, 112 Mo. App. 1; Bange v. Supreme Coun-
cil, 128 Mo. App. 461.

*Derwood E. Williams, Joseph R. Palmer* and *Abbott,
Fauntleroy, Cullen & Edwards* for respondents.

(1) There is nothing in the policy to indicate that
the parties understood that the payment of the insurance
was to depend upon the success that might attend the ef-
forts of the corporation to collect assessments. The pol-
icy contains an unconditional promise to pay a fixed
sum for a fixed premium. Hence, the right to pay at the
old rate was one of the rights provided for and that the
insured contracted for. It was a vested right, immune
from change by amendment, in the absence of a specific
reservation of power to amend in that particular. (2)
The policy is complete in itself and does not refer to the
by-laws, and, front and back, exclude the plea that it is
controlled by matter *aliunde.* (3) There is no provision
made in the policy for the collection of premiums to pay
losses of the company by assessments. (4) The provi-
sion on the back of the certificate that the indemnity shall
be paid from the benefit fund, which consists of all
moneys paid by the members not previously transferred
to the safety fund, except certain expense, and that in the
event that there is not sufficient money in the benefit fund,
then all or any part thereof shall be paid from the safety

fund, contains nothing which conveys the idea that assessments are to be levied. Indeed, the idea there ex-pressed is the sum shall be paid absolutely by the company, in the first instance, out of a certain fund of the defendant company, and if that is not sufficient then it shall be paid out of another one of the company's funds. This is an unconditional promise to pay by the company out of its own funds. (5) The right to assess members must be clearly given and the language conferring it is strictly construed. Craig v. Insurance Co., 136 Mo. App. 5. (6) The agreement of the insurance company, as plainly written in its policy, is that it will pay the amount stated in the policy, "subject to the provisions and requirements on the back of this certificate, which are hereby referred to and made a part hereof." It is a rule of universal application that the mention of one thing or the specification of one thing excludes all others. This policy was issued and the agreement made to pay, subject only to the provisions and requirements stated in the certificate. There is nothing in these provisions which authorized the association to so increase the premium as to practically destroy the value of the insured's certificate. (7) There was no forfeiture and no abandonment of the policy under our decisions. Rosch v. Bankers Life, 201 S. W. 919; Wayland v. Indemnity Co., 166 Mo. App. 221; Murphy v. Brotherhood, 199 S. W. 730; Easter v. Yeoman, 172 Mo. App. 298.

WALKER, J.—This is an action on a life insurance certificate or policy. It was issued in December, 1894, to Leroy M. Lee, for $2000, by the Safety Fund Life Association, then organized and doing an insurance business in this State under the authority of Chapter 89, Article 3, Revised Statutes 1889, now Chapter 50, Article 3, Revised Statutes 1919, providing for the incorporation of life insurance companies on the assessment plan. The insured died in March, 1917, and his wife, who was the beneficiary first named, having predeceased him, his legal representative became, under the terms of the

policy, his beneficiary.  This suit was therefore brought
by the administrator of the estate of the insured, in the
Circuit Court of Lincoln County in December, 1918, and
upon a trial by that court, a jury having been waived, a
judgment was rendered in favor of the plaintiff in De-
cember, 1919, in the sum of $1644.  From this judgment
the defendant appealed to the St. Louis Court of Appeals
(238 S. W. 858) which affirmed the judgment of the cir-
cuit court, but certified the case to the Supreme Court on
the ground of a conflict in its ruling with that of the Kan-
sas City Court of Appeals in Ficklin v. Missouri State
Life Insurance Company, 205 Mo. App. 452.

In 1899 the Safety Fund Life Association changed
its charter, but not its name, to conform to the require-
ments of an act of the Legislature approved March 27,
1899, now Chapter 50, Article 4, Revised Statutes 1919,
providing for the organization of insurance companies
on the Stipulated Premium Plan.  Subsequently the name
of the Association was changed to that of the Missouri
State Life Insurance Company; and in 1902 it amended
its charter to conform to the provisions of Chapter 119,
Article 2, Revised Statutes 1899, now Chapter 50, Arti-
cle 2, Revised Statutes 1919, and was authorized there-
after to transact a life insurance business under the
name of the Missouri State Life Insurance Company as
a Level Premium or Legal Reserve Company.

The certificate of membership issued by the Asso-
ciation to the insured was pursuant to the following ap-
plication:

"I, the undersigned applicant, do hereby declare that I have
made full and correct answers to all questions in this application,
and, whether said answers, together with the accompanying expla-
nations, are in my own handwriting or not, I adopt as my own, ad-
mit to be material and warrant them to be full, complete and true.
I further agree that if any misrepresentations or fraudulent or un-
true answers have been made, or if any facts which should have
been stated have been suppressed, if death shall result from suicide,
or if I shall use intoxicants, opium or other stimulants to an extent
liable to injure my health, or shall practice any pernicious or im-
moral habits tending to shorten life, or shall omit or neglect or re-
fuse to make any of the quarterly payments at the place and with-
in the times in which they are required to be made by the certificate
303 Mo. Sup.—32.

of membership to be issued hereon and the by-laws of this association, then, and in either event, the said contract and certificate of membership shall be null and void, whether so declared by the association or not, and all moneys which have been paid shall be forfeited to said association."

The policy issued on the above application reads as follows:

"No. 1440.
"(The Safety Fund Life Association of Monroe City, Missouri.)
"Amount $2,000.                                                    Age 48 years.
"In consideration of the representations, agreements and warranties made in the application herefor, the Safety Fund Life Association does hereby issue this certificate and policy of insurance and constitutes Leroy M. Lee of the County of Lincoln, State of Missouri, a member of said association and promises to pay at its home office to his wife, Josephine Lee, if living, if not living, then to his legal representatives, two thousand dollars within ninety days after the acceptance of satisfactory proofs at its home office of the death of the said member, upon the following conditions, and subject to the provisions and requirements stated on the back of this certificate, which are hereby referred to and made a part hereof: the quarterly payment of eight and no/100 dollars shall be made to the association at its home office within the months of January, April, July and October of each and every year, until such quarterly payments have been made for a full term of five years, beginning with the month of April next; at the end of said term the quarterly payments defined in provision No. 1 hereof shall be made to the association at the place and within the months aforesaid of each and every year during the continuance of this certificate of membership.
"In witness whereof, the Safety Fund Life Association caused its corporate seal to be hereunto affixed and these presents to be signed by its president and secretary at Monroe City, Mo., this tenth day of December, A. D. 1894.
"Thos. Proctor, President.
"(Seal of Safety Fund Association,
"Edmund P. Melson, Secretary.)"

The provisions of the policy to which reference is made are as follows:

"Quarterly Payments.

"(1)   The quarterly payments from and after the expiration of the term of five years herein specified shall include quarterly dues of 75 cents on each $1,000 insurance carried and *pro rata* amounts necessary for mortuary purposes;   provided, that such *pro rata* amounts shall be sufficient to pay annually not less than five deaths to the one thousand members, and provided further, that if, during any one year, the total cost of insurance exceeds the annual payments shown in the table of rates hereto appended, the Safety Fund shall be used to pay such excess.

"TIME OF PAYMENTS.

"(3)   If the holder of this certificate fails to make any quarter-ly payment within the time and place herein required, or shall engage in military or naval service, his membership shall there-upon cease, and all former payments by him made hereunder shall *ipso facto* be forfeited to the association.

"BENEFITS.

"(4)   The indemnity under this certificate shall be paid from the Benefit Fund, which consists of all moneys paid by members not previously transferred to the Safety Fund, except the first pay-ment and the regular annual dues, which may be used for con-tingent expenses.  In the event that there is not sufficient money in the Benefit Fund, then all or any part thereof shall be paid from the Safety Fund."

The evidence shows that beginning in 1895, and for the five years succeeding, the insured made quarterly payments of eight dollars each; that from April, 1900, to October, 1902, the insured made payments in variable but ever increasing amounts, and in the year 1902 paid nine dollars per quarter without complaint.  The evi-dence tends to show that the Safety Fund had become de-pleted, on account of the high death rate, and in 1902 an examination by a representative of the Superintendent of Insurance of the State disclosed that the Safety Fund had been entirely exhausted as a result of such losses.

In January, 1903, the defendant made a quarter an-nual assessment against the insured in the sum of $14.16; notified him, and demanded payment of that amount.  The insured failed to pay within the time required by his certificate of membership or at any other time, and there-upon defendant canceled the certificate for non-payment of the assessment and entered the cancellation on its records.  The above assessment was the proportion of the then outstanding death losses, incurred by deaths of members holding similar certificates in the Safety Fund Life Association, plus the expense element provided by said certificate, and there was nothing available in the Safety Fund which could be used to pay a portion thereof.

There was evidence tending to show, that the in-sured, when an assessment of $14.16 was made, tendered $9 in payment of same, but no other tenders were sub-sequently made.

The judgment of the circuit court was for plaintiff in the sum of $2000, the face value of the certificate, less the sum of $456, the amount of the unpaid assessments at the rate of $8 per quarter from 1903 to the death of the insured, with interest, which brought the total judgment to $1644, as stated.

The contentions of the appellant are: first, that this is an assessment policy as contradistinguished from a level-rate or old-line policy; and second, that the defendant having failed to pay the assessments as required by the certificate, the policy contract embodied therein has been forfeited by the failure of the defendant to comply with its terms.

I.   The question necessary to be solved in this proceeding is the character of the contract.  If upon its face it clearly indicates that the payments by the insured necessary to continue the life of the policy

Assessment or Old-Line Insurance.

were to be gathered in whole or in part from the assessments upon the holders of certificates of a like class, then the certificate or policy may be classified as upon the assessment plan (Williams v. Ins. Co., 189 Mo. l. c. 81; Andrups v. Accdt. Assn., 283 Mo. l. c. 449); if, however, it provides for the payment of fixed premiums at stated intervals without condition, then it is to be classified as a level-premium or old-line policy

Preliminary to a consideration of the contract itself, which will include whatever has by its terms been made a part of same, the persuasive fact is evident that this Association was created to conduct a life insurance business on the assessment plan.  It was incorporated under a statute (Chap. 89, Art. 3, R. S. 1889) limited by its terms to insurance of that character.

Then, as now, the section, definitive of this character of insurance, provides that:

"Every contract whereby a benefit is to accrue to a person or persons named therein, upon the death or physical disability of a person also named therein, the

payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance upon the assessment plan, and the business involving the issuance of such contracts shall be carried on in this State only by duly organized corporations which shall be subject to the provisions and requirements of this article." [Sec. 6155, R. S. 1919.]

This should narrow the compass of the vexing question under review if we find from the terms of the certificate that the payment of the benefit to be derived therefrom "is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts." Upon such a finding we are authorized in concluding that the contract of insurance is upon the assessment plan. It is not material that the word "assessment" was not used in the certificate. It means nothing more as applied to the facts here under consideration than an apportioning of amounts required to be paid. Not only did the certificate require this, but it further provided that the amounts apportioned should consist of moneys paid by members not previously transferred from the Safety Fund. These requirements fully comply with the statute defining assessment companies.

It is true, that for a fixed period, five years, the quarterly payments required of the insured were to be made at regular intervals and in certain uniform amounts. This requirement, however, was not unconditional, but subject to certain provisions indorsed on and which became a part of the contract. One of these provisions was to include certain quarterly dues on each thousand dollars of insurance and *pro rata* amounts necessary for mortuary purposes. By this we understand that payments thus required to be made by the insured are to constitute *pro rata* amounts necessary to meet the death benefits on matured obligations of the Association. The manner in which these obligations are to be paid is designated in another requirement endorsed on the certificate which provides:

"(4)   The indemnity under this certificate shall be paid from the Benefit Fund, which consists of all moneys paid by members not previously transferred to the Safety Fund, except the regular quarterly dues, and such part of the first three quarterly payments as shall be necessary for contingent expenses.   In the event that there is not sufficient money in the Benefit Fund, then all or any part thereof shall be paid from the Safety Fund."

This provision, if its own terms are not sufficiently clear without comment, means that the indemnity, which it but another term for a death benefit or amount due upon a certificate on account of the death of the insured, is to be paid from the benefit fund arising from money paid by members which has not been transferred to the Safety Fund.   A benefit fund, such as is here contemplated, in the very nature of the contract is based upon and owes its continued existence to the mutual obligations of the members and cannot be created except by assessments.   The conduct of the parties during the existence of the contract harmonizes with this conclusion.   After the expiration of the five years succeeding the making of the contract the Association levied assessments upon the members increasing in amount each year as authorized by the certificates, to the year 1902, and these were paid without protest by the insured.   For the first quarter of that year the assessment was nine dollars, which was also paid by the insured.

An examination of the condition of the Association in January, 1903, disclosed that the increased death-rate had exhausted the Safety Fund.   This, under the authority of the articles of incorporation, as disclosed in the certificates of membership, necessitated higher assessments to meet the matured obligations of the Association of the amounts due under the contracts to the beneficiaries of deceased members.   A quarter annual assessment was thereupon levied upon each member of $14.16.   The insured was notified of same and payment demanded.   This assessment, it appears, was the proportion necessary to be paid by each member to meet the

outstanding death losses and the loading charge or the necessary element of expense incident thereto which was authorized by the certificates. Upon the receipt of this notice the insured tendered $9 in payment of same which was refused by the Association and his certificate was declared forfeited and ordered canceled.

The foregoing is indicative of the fact that all of the parties by their conduct construed this certificate as an insurance contract or policy on the assessment plan. It is elementary that the meaning of a contract may be measured by the conduct of all of the parties thereto, if the terms of the contract, when reasonably construed, are in harmony with that conduct. [Kunze Const. Co. v. Gilsonite Const. Co., 281 Mo. 629.] No difficulty is encountered on that score in the matter here under review. The certificate, in our opinion, clearly defines its character as a policy of insurance on the assessment plan. The conduct of the parties was in harmony with this conclusion and cannot be construed as other than adding force to its affirmative character. Cases cited in opposition to this conclusion will, upon an examination of the facts in each, be found to involve contracts differing in their distinctive features from that at bar. This is especially true of the earlier cases construing policies issued by this Association. It appears that the contracts of insurance there under review were different in their terms from that in the instant case, in that they provided in some instances for the payment of fixed premiums at regular intervals and hence rendered the contracts therein subject to the law regulating old-line insurance companies. These cases, therefore, do not constitute precedents for the construction of the contract in the instant case.

II. The articles of association (Sec. 5) of the defendant provided in effect that if a member failed to meet a payment required of him under his contract within thirty days after the first day of the month in which notice of same was mailed to him, his

Forfeiture.

membership would become forfeited and his rights and interest in the property of the Association would terminate. Provision was added for the granting of such time for payment or re-instatement as the board of directors might deem fair and equitable.

Under the power thus granted the board of directors was authorized, upon a failure of the insured to comply with this requirement, to forfeit his membership in the Association. While the entry upon the records of this action was not requisite to its effectiveness, the records disclosed that it was done in this case. [Darby v. N. W. Mut. Ins. Co., 293 Mo. 12 and cases; Bondurant v. Mo. St. Life, 198 S. W. (Mo. App.) 74.]

III. It is further contended by the appellant that not only has this contract of insurance been forfeited, but that the same was abandoned by the insured long before his death. The last demand made upon him, with

**Abandonment.** which he refused to comply, was in January, 1903. He lived thereafter for fourteen years or until March 16, 1917. During all of this time he did nothing assertive of any right or interest in or claim against the Association. Something more was necessary to have been done by the insured after his refusal to pay the assessment in 1903 to preserve his contract in force during the remainder of his life. [Lavin v. Grand Lodge, 112 Mo. App. 1.]

In Bange v. Supreme Council, 128 Mo. App. 461, it is said that even when an expulsion or suspension of a member is void, he is nevertheless under a duty to his co-contributors to affirm or disaffirm the act of expulsion or suspension within a reasonable time, and this too, in some distinct manner under the circumstances. Therefore, where such suspended member takes no steps of any kind to secure his re-instatement, allows contributions which had accrued and were payable prior to the date of his expulsion to remain unpaid, and neither tenders such contributions nor any subsequently accruing

contributions or dues, he must be treated as having acquiesced in and consented to the sentence of expulsion or suspension and thereafter abandoned the order and his insurance contract therewith. These rulings sustain the conclusion that the insured acquiesced in the forfeiture of his contract and abandoned the same.

From the foregoing it follows that we disapprove of the ruling of the St. Louis Court of Appeals in Lee v. Safety Fund Life Assn., 238 S. W. 858, and concur in the result reached in Ficklin v. Missouri State Life Ins. Co., 205 Mo. App. 452.

The judgment of the trial court is therefore reversed. All concur.