FRANK KEEN AND LAURA KEEN, APPELLANTS, v. BANKERS MUTUAL LIFE COMPANY, A CORPORATION, RESPONDENT.—93 S. W. (2d) 85.

St. Louis Court of Appeals. Opinion filed April 7, 1936.

Motion for rehearing overruled April 28, 1936.

*John P. Griffin* for appellants.

*Jones, Hocker, Gladney & Jones* for respondent.

HOSTETTER, P. J.—This is a suit on a life insurance policy for $2000 begun in the Circuit Court of the City of St. Louis. It was issued by defendant on the 10th day of December, 1924, to, and upon the life of Leonard Oran Keen, who was twenty-one years old at the time of its issuance, and died on the 29th day of March, 1933.

The plaintiffs, who are the beneficiaries named in the policy, are the father and mother of the insured.

The premiums were payable in quarterly installments of $5.82 each and were paid up regularly until default was made in the payment of the installment due on December 10, 1932, three months and nineteen days prior to insured's death. The petition was in conven-

tional form and the answer admitted the issuance of the policy, the death of the insured, the offer of plaintiffs to make proof of same, and alleged that the defendant was doing an assessment insurance business and that the policy was issued and delivered in Missouri and the premiums thereon were paid in Missouri and that the quarterly premium due December 10, 1932, was not paid and that the policy lapsed for failure to pay same.

It was further alleged by defendant that it is, and was at all times mentioned, a corporation organized under the laws of Illinois and licensed to do an assessment life insurance business and that it was at all times mentioned, duly licensed to engage in such assessment life insurance business in Missouri under and by virtue of Section 5745, et seq., Revised Statutes of Missouri, 1929.

The answer then sets out the times and methods of paying the quarterly premiums and quotes the clause in the policy providing for the lapse of the insurance when insured fails to pay any installment when due, and sets out the following provision contained in the policy under the head of ''Notices,'' viz.:

''The Company shall give notice of any premium due by depositing the same in the Post Office at Freeport, Illinois, addressed to the last known Post Office address of the Policy Holder as shown by the records of the Company. If by any reason of excessive mortality, or other cause, the Emergency Fund shall become exhausted, all Policy Holders shall be notified to pay, within thirty days thereafter, premiums apportioned equitably, sufficient *in toto* to maintain an amount equal to the maximum Policy issued by the Company, which amount shall not be less than one quarterly collection. Proof of mailing of said notice shall constitute and be deemed and held to be conclusive proof of notice to the Insured of said premium being due.''

In the answer clauses from the policy are also set out providing for thirty days grace in the payment of any installment of premium and the privilege of reinstatement of insured within one year following for forfeiture for failure to pay premiums provided insured would furnish satisfactory evidence of insurability and make payment of all premiums then due.

Defendant further avers in the answer the mailing of due notices of the installment of premium due December 10, 1932, and the lapsing of the insurance on January 10, 1933, at the expiration of the thirty days of grace, and the giving of notice by mail to insured shortly after January 10, 1933, containing an invitation to apply for reinstatement.

Defendant further avers that the policy had no extended insurance value; that it is an assessment company and the policy is not a legal reserve one whereby the policy reserve continues the insurance after lapse for nonpayment of premiums or assessments thereon; and that

on the failure of insured to pay a premium or assessment within the thirty days of grace provided therein the policy lapsed and became null and void.

The reply admitted that defendant was licensed in Missouri to do an insurance business on the assessment plan, but denied that the policy in suit was such a policy, but alleged that it was an ordinary old-line life insurance policy and entitled to the benefits of Section 5741, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 5741, p. 4388), which provides that three-fourths of the reserves on said policy shall be used as a net single premium, which was sufficient to carry the insurance beyond March 29, 1933, the date of insured's death, and that the policy was in full force and effect on said date.

The case was tried before the court without the intervention of a jury, upon an agreed statement of facts which includes the matters hereinbefore set out.

Defendant offered its charter in evidence, as it existed when the policy in suit was issued, for the purpose of showing that it contained the following clause, viz.:

"The Company may call for additional premiums during any premium paying period should the premium provided herein be insufficient to meet the requirements of any policy or to provide the reserve or emergency fund required by law, but no part of such excess premium shall be used for any purposes except the payment of policy claims."

Defendant's counsel directed attention to the first page of the policy sued on, which contained the following clause:

"In consideration of the application for this policy, copy of which appears hereon and of the payment in the manner specified of the premiums herein stated, subject to the provisions on the second page hereof, which together with this application, are hereby made a part of this contract, hereby insures," etc.

And to said second page of the policy, which contained the clause set out in defendant's answer, under the heading of "Notices."

It is provided in the policy as follows:

"ENTIRE CONTRACT. This Policy and the application therefor, copy of which appears hereon, constitute the entire contract between the Insured and the Company."

Plaintiffs' counsel made proffer to show by plaintiff, Frank Keen, as a witness, that the agent who took his son's application said, at the time of the taking of the same, that the amount of the premium would be $22.40 a year and that there would be no change, but the proffer was refused by the court on objection.

The trial court held that the policy sued on was a contract of insurance on the assessment plan and rendered its finding and judg-

ment for defendant, and, after an unavailing motion for a new trial, plaintiffs bring the cause by appeal to this court for review.

It was agreed that if the policy sued on was construed to be an old-line level premium policy the reserve would be sufficient to carry the extended insurance beyond the date of insured's death, otherwise, that the insurance had lapsed prior to such date.

It is agreed by counsel that the sole question involved in this appeal is as to the nature of the policy, whether it is an old-line insurance policy or one on the assessment plan. If the former, the lower court's judgment is erroneous, and if the latter it is correct.

Our Supreme Court in Elliott v. Des Moines Life Insurance Co., 163 Mo. 132, l. c. 151, 152, 63 S. W. 400, holds that the essential elements of an assessment policy are to be found in the quoted portions of three sections of the statutes, which are now known as Sections 5745, 5747 and 5749 of Article 3, Chapter 37, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., secs. 5745, 5747 and 5749, pp. 4398, 4401 and 4403), viz.:

"Sec. 5745. Character of Insurance.—Every contract whereby a benefit is to accrue to a person or persons named therein, upon the death or physical disability of a person also named therein, the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance upon the assessment plan, and the business involving the issuance of such contracts shall be carried on in this State only by duly organized corporations which shall be subject to the provisions and requirements of this article.

"Sec. 5747. Policy to specify amount to be paid.—Every policy or certificate hereafter issued by any corporation of this State doing business in conformity with the provisions of this article, and promising a payment to be made upon a contingency of death, sickness, disability or accident, shall specify the exact sum of money which it promises to pay upon each contingency insured against, and the number of days after satisfactory proof of the happening of such contingency at which such payment shall be made, and upon the occurrence of such contingency, unless the contract shall have been voided for fraud or breach of its conditions, the corporation shall be obligated to the beneficiary for such payment at the time and to the amount specified in the policy or certificate; . . .

"Sec. 5749. Accumulation of emergency fund.—Corporations organized or doing the business of life insurance under this article shall provide for the accumulation of an emergency fund, . . . which fund, together with the income thereon, shall be a trust fund for the payment of death claims or other benefits provided for in their policies or certificates, . . . If, in any period of six months, the death rate of any such corporation shall be in excess of the annual rate of

mortality as shown by the American life tables, it shall be lawful for such corporation to draw out any portion of said securities necessary to meet such excess. . . . In case the amount so drawn out shall reduce such fund below the amount so required to be provided for, it shall be the duty of said corporation to make up the said deficiency within six months thereafter—. . .''

After a careful perusal of the very excellent briefs furnished by counsel for the respective parties we have reached the conclusion that the policy sued on is a contract of insurance on the assessment plan.

The clause found on the second page of the policy reads as follows:

"If by any reason of excessive mortality, or other cause, the Emergency Fund shall become exhausted, all Policy Holders shall be notified to pay, within thirty days thereafter, premiums apportioned equitably, sufficient *in toto* to maintain an amount equal to the maximum Policy issued by the Company, which amount shall not be less than one quarterly collection.''

Defendant's charter, which was introduced in evidence and the amendments thereto, which were in force at the time of the issuance of the policy in suit, furnish additional evidence as to the purposes of its organization and its right and power to require all policy holders to "chip in" and pay the necessary amounts in order to keep the emergency fund, out of which death claims are paid, replenished, as required by the provisions of Section 5749, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., sec. 5749, p. 4403).

Defendant's original charter issued in 1907 under its former name, was under an act of the Legislature of Illinois to "incorporate companies to the business of life or accident insurance on the assessment plan," and it was so certified.

The articles of association which are embodied in its charter recited that the "object for which the corporation is formed is to do the business of life insurance on the assessment plan," and provision is made for the levy of assessments for mortuary and expense purposes upon its members.

An amendment to the charter, made in 1915, provides that policies may be issued at certain stipulated premium rates at various ages; that if these rates should not be sufficient to meet the mortuary requirements of the company it shall have the right to "call on each insurant for his *pro rata* share of the amount necessary to meet such excess.''

An amendment to defendant's charter, in 1921 (which was prior to the issuance of the policy in suit) contained the following provision:

"The Company may call for additional premiums during any premium paying period should the premium provided for herein be insufficient to meet the requirements of the policy.''

The fact that during the eight years the policy in suit was in force

the emergency fund was not depleted so that no necessity arose to require the defendant corporation to exercise this right and power is not important or controlling. It clearly had the right and power to make other calls on policyholders when the occasion arose requiring such action. The possession of such right and power by defendant corporation certainly made the payment of benefits to its policy holders or their beneficiaries in *some* "manner or degree dependent upon the collection of an assessment upon persons holding similar contracts," as provided by Section 5745, Revised Statutes of Missouri, 1929.

In Hill v. Business Men's Accident Association (Mo. App.), 189 S. W. 587, the policy there under consideration was held to be an assessment contract because the right was reserved to the company to levy additional premiums if the death claims required it, the court using the following language:

"But there are additional provisions which call for assessments of amounts unascertained until the necessity for their use arises. In these respects the insurance is made to depend 'in some manner or degree upon the collection of an assessment,' and the case strongly resembles that of Hanford v. Mass. Ben. Assn., 122 Mo. 50. That case was considered and approved in Elliot v. Ins. Co., 163 Mo. 132. In the latter case the breadth of the statutory expression as to the benefit being dependable in any manner or degree upon an assessment is interpreted as it reads. So that, notwithstanding stated sums payable at specified times are named in the contract as due from the assured, yet if 'somewhere along the line of its operations' provision is made for an assessment upon the members for the payment of the insurance, it is an assessment contract. These cases applied to the contract make it assessment insurance."

In Hayden v. Franklin Life, 136 Fed. 285 (C. C. A. 8), the court said:

"It is, therefore, little less than academic to follow the refinement of learned counsel in his contention that the stipulated payments by the contract became fixed and level at the amount he paid when he entered the association, for the controlling authority is that the right, having been reserved by the insurer to levy assessments on policyholders to meet any impairment of its mortuary fund, and its mortuary experience, rendered variable the payments due by the insured. They were therefore subject to change at the will of the governing board of the association. This fixed the character of the contract as an assessment contract."

In Haydel v. Mutual Reserve, 104 Fed. 718, Judge THAYER said:

"While the premium at first reserved is a definite sum, yet by further provisions the executive committee of the association can require the holders of such policies to pay a greater or less sum than

that stipulated to be paid on the face of the policies, if the condition of the defendant company at any time renders such action necessary. . . . When all the provisions of the contract are considered it seems to retain all the essential features of assessment insurance.''

The distinction between an old line insurance contract and an assessment contract is succinctly stated by the court in Haydel v. Mutual Reserve, 98 Fed. 200, as follows:

''It is important to understand distinctly what is assessment insurance or insurance on the assessment plan. A general statement of this proposition is that it is assessment insurance when the benefit to be paid is dependent upon the collection of such assessments as may be necessary for paying the amount insured. In other words, it is assessment insurance if payments to be made by the insured are not unalterably fixed—by the contract. On the contrary, an old line policy is a contract where the amount to be paid by the insured is fixed, the premiums to be paid are unalterable, and the liability incurred by the defendant company is also fixed, definite and unchangeable.''

In Westerman v. Supreme Lodge K. of P., 196 Mo. 670, 1. c. 715, 716, 94 S. W. 470, 5 L. R. A. (N. S.) 1114, the above extract from the opinion in the Haydel case was quoted with approval.

It is urged on behalf of plaintiffs that defendant's charter and amendments thereto were improperly admitted in evidence because it is provided in the policy that ''the policy and application shall constitute the entire contract.'' But aside from this question, we think the charter of a corporation determines its power and rights and is always pertinent. The fact that its charter and amendments show affirmatively that it has the power, and is under the duty, to make additional monetary requirements on its policyholders when the fund out of which mortuary losses are to be paid has become depleted, it is not improper for defendant to show by its charter that it possesses such powers to make and enforce such provisions as are contained in the clause under the head of notices on the second page of the policy under the rights and powers reserved to it by the terms of its charter.

It is also urged on behalf of plaintiffs that the provisions in the policy for the levying of additional assessments on policyholders is invalid because no officer is designated to do so. As we interpret the clause, the company is the one to make the additional assessment when the exigencies of the situation require it, and the contention that it has to be some particular officer or board to make the assessment is without merit.

It is also claimed on behalf of plaintiffs that there is no obligation on the part of the policyholders to respond to such call for additional premiums or assessments.

The contract is not merely one between the insured and the com-

pany, but it is also between the insured and all other insured, and the beneficiaries of deceased insured to pay his *pro rata* share of death losses while he remains a member of the company or association.

In Ellerbe v. Barney, 119 Mo. 632, 1. c. 642, 25 S. W. 384, 23 L. R. A. 435, the court, in discussing the power of a receiver of an assessment association to recover unpaid assessments from the members thereof said:

"The beneficiaries of the deceased members must have acquired a right to these assessments intended for their relief; otherwise the primary object of the association as a society for the benefit of widows and orphans would fail. The assessment could have no value or meaning if they conferred no right on the beneficiaries to collect the amount so assessed, and a corresponding obligation on the part of the members to pay them. The principal, if not the only, fund provided for payment of them consisted in the obligation imposed by the by-laws of the members. Their liability took the place of capital and accumulated funds, and constituted substantially the only assets provided by the members for securing the aid and relief contemplated in the compact of the association."

It is also urged in behalf of plaintiffs that the clause under the head of notices, which purports to give the company the right to make additional assessments on its policyholders, is hidden away and is in the middle of the paragraph and is in such an obscure and out of the way place as to be calculated to mislead and deceive the insured.

Upon an examination of a photostatic copy of the policy we have reached the conclusion that there is no merit in this criticism. The lines on the first page of the policy are farther apart than those on the second page where the criticised clause appears, and the type on the first page is very slightly larger than that on the second page, but both pages are quite legible. The third page of the policy sets out a copy of the application, which is in much finer print than either page one or two.

The first clause on the first page of the policy down to the name of the insured reads as follows:

"In consideration of the application for this Policy, copy of which appears hereon and of the payment in the manner specified of the premiums herein stated, subject to the provisions on the second page hereof, which, together with the application, are hereby made a part of this Contract. HEREBY INSURES the life of the person herein designated as the Insured, for the amount named herein, payable as specified."

On first blush it seems quite a hardship that the beneficiaries under this policy in suit should be deprived of their right to recover after the premiums had been paid thereon for eight years. But the closing clause on the first page of the policy reads as follows:

"This insurance is subject to lapse by failure of the insured to pay any installment of the premium herein provided."

On the second page appear two clauses, one providing thirty days of grace after any default in payment of any installment of premium, during which time the insurance is kept in force, and the other permitting reinstatement for one whole year after the forfeiture for nonpayment of premium, provided insured furnishes satisfactory evidence of insurability and pays the past due premiums. It was shown in evidence that defendant notified the insured of the forfeiture, which occurred on January 10, 1933, at the end of the thirty days grace period, and further invited him to apply for reinstatement, which, doubtless, he could have accomplished by merely paying $5.82.

So there was no snap judgment taken by the defendant against the insured and he had around two and a half months after the expiration of the thirty days of grace period, when the policy became forfeited, to procure his reinstatement on written invitation from defendant to do so. We feel that we have no more right or justification to nullify the criticised clause under the head of "Notices," on the second page of the policy than we have to wipe out and nullify any other clause in the policy. We are unable to reach any other conclusion than that the policy has all the necessary essentials of a contract of insurance under the assessment plan and we feel that our conclusion will find support in the following list of authorities.

[Section 5745, R. S. Mo. 1929 (Mo. Stat. Ann., sec. 5745, p. 4398); Elliott v. Des Moines Life Assn., 163 Mo. 132, 63 S. W. 400; Hanford v. Mass. Ben. Assn., 122 Mo. 50, 26 S. W. 680; Westerman v. Supreme Lodge, 196 Mo. 670, 94 S. W. 470, 5 L. R. A. 1114; Moran v. Franklin Life, 160 Mo. App. 407, 140 S. W. 955; Rose v. Franklin Life, 153 Mo. App. 90, 132 S. W. 613; Lee v. Missouri State Life, 303 Mo. 492, 261 S. W. 83; Trisler v. Mutual Reserve, 128 Mo. App. 497, 106 S. W. 1082; Smoot v. Bankers Life, 138 Mo. App. 438, l. c. 461. 120 S. W. 719; McCoy v. Bankers Life Ass'n of Des Moines, 134 Mo. App. 35, 114 S. W. 551; Kribs v. United Order of Foresters, 191 Mo. App. 524, 177 S. W. 766; Ficklin v. Missouri State Life, 205 Mo. App. 452, 225 S. W. 102; Hayden v. Franklin Life, 136 Fed. 285 (C. C. A. 8); Haydel v. Mutual Reserve, 104 Fed. 718; Haydel v. Mutual Reserve, 98 Fed. 200; Mutual Reserve v. Roth, 122 Fed. 85.]

It follows that the trial court correctly ruled on the nature of the policy in suit and its judgment is, therefore, affirmed. *Becker* and *McCullen, JJ.*, concur.