# WILLIAMS v. ST. LOUIS LIFE INSURANCE COMPANY, Appellant.

### Division One, May 24, 1905.

1. **INSURANCE: Vexatious Delay: Substitution.** An unwarranted defense that the insured caused another to substitute herself to take the medical examination in her stead, will justify the court in submitting to the jury the question of vexatious refusal to pay. And in this case it is held that the evidence shows that that defense was unwarranted.

2. ———: **Assessment.** An insurance policy to be held to be an insurance on the assessment plan must show upon its face that the parties to the contract understood that the amount of money to pay the insurance promised was to be gathered, in whole or in part, by assesments upon holders of policies in the same class or category. Unless it does so show it is old line insurance. And where an examination of the policy reveals noth-

ing to indicate that the parties to the contract understood that the amount to be paid in case of death was dependent, in whole or in part, upon the success that might attend the efforts of the company to raise it by assessments imposed on members, the insurance will not be held to be insurance on the assessment plan.

3. ———: ———: **Emergency Fund.** A policy showing that the price of insurance was calculated on the American Tables of Mortality, and providing that out of the premiums collected after the first two years a certain sum would be laid aside each year to make the emergency fund required by the statute, and that if the death rate should be in excess of that estimated in the tables an assessment might be made to meet the excess, does not make the amount the company agrees to pay dependent upon assessments.

4. ———: ———: **Incontestability: Misrepresentations.** The terms of an assessment policy may make it incontestable. Where the policy ends with, "Otherwise when this policy shall have been in continuous force two years from its date, it shall thereafter be incontestable except for non-payment of premiums or under statement of age," the company cannot refuse to pay the policy, which was for more than two years in force prior to the insured's death, by setting up as a defense misrepresentations and breach of warranties in securing it, whether it be an assessment policy or an old line policy.

Transferred from St. Louis Court of Appeals.

CIRCUIT COURT JUDGMENT AFFIRMED.

*C. W. Rutledge* for appellant.

(1) The provisions of general insurance laws do not apply to such assessment contracts, and misrepresentations warranted to be true avoid the policy whether fraudulent or not, whether material as a matter of fact or not, or whether of matters actually contributing to the death or not. The "Assessment Plan" insurance law is a complete and independent insurance law of itself. Aloe v. Life Ins. Co., 164 Mo. 675; Elliott v. Life Ins. Co., 163 Mo. 132; Hanford v. Mut. Ben. Assn., 122 Mo. 50; Aloe v. Life Assn., 147 Mo. 561; Jacobs v. Life Assn., 142 Mo. 49, 146 Mo. 523; Haynie

v. Knights Templar & Ind. Co., 139 Mo. 416; McDonald v. Life Assn., 154 Mo. 618; Richards v. Life Ins. Co., 68 Mo. App. 585; Thassler v. Mut. Life Assn., 67 Mo. App. 505; Sparks v. Knights Templar & Ind. Co., 61 Mo. App. 109. (2) The sole test in determining whether a policy is an assessment contract is: Is there anything in the contract giving the company the right to call for the payment at some time of something more than a flat premium, on account of death losses? Is the "payment of the policy in any manner or degree dependent upon the collection of assessments from persons holding similar contracts?" Is the amount to be paid by the policy-holder a fixed, certain sum or premium, or is the amount to be paid in any manner or degree contingent on death losses? Is the policy-holder's liability certain or contingent? Can an assessment be called under the policy? R. S. 1899, secs. 7901-7906; Hanford v. Mut. Ben. Assn., 122 Mo. 50; McDonald v. Life Assn., 154 Mo. 618; Elliott v. Life Ins. Co., 163 Mo. 132. (3) Section 7901 of the "Assessment Plan" law defines assessment contracts. Section 7910 provides that nothing therein contained shall subject domestic assessment companies to any other provisions of the general insurance laws, except as distinctly herein set forth, and "herein set forth" is construed to mean the entire chapter. Aloe v. Ins. Co., 164 Mo. 675; Hanford v. Benefit Assn., 122 Mo. 50. (4) The court erred in giving the instructions that if the jury believed the refusal to pay was vexatious, they could assess 10 per cent damages and attorney's fees for plaintiff, under section 8012. This statute is not within the assessment law, and does not apply to the case. Again, the refusal contemplated by the statute must have been without reasonable cause. It implies a willfullness. The penalty ought not to be inflicted unless the evidence and circumstance show the delay was without excuse. Blackwell v. Ins. Co., 80 Mo. 75; Lockwood v. Ins. Co., 47 Mo. 50.

*J. H. Trembley* for respondent.

(1) The first question involved is not whether the policy in question was issued by an assessment or an old line company, but whether the policy issued is an assessment or old line contract. Logan v. Ins. Co., 146 Mo. 114; Toomey v. Supreme Lodge, 147 Mo. 139. Taking its various provisions into consideration, there can be no question but that it is, as held by the trial court, an old line contract, and must be governed by the laws applicable to such policies. R. S. 1899, sec. 7901; Logan v. Ins. Co., supra; Toomey v. Supreme Lodge, supra; Jacobs v. Assn., 146 Mo. 523; Aloe v. Life Assn., 164 Mo. 686. (2) It was not necessary that plaintiff should offer direct evidence of vexatiousness. Vexation can be inferred by the trier of the facts from the facts and circumstances of the case. Brown, Admr., v. Assurance Co., 45 Mo. 227.

VALLIANT, J.—This is a suit on a life insurance policy. The defendant is a domestic corporation, authorized to issue life insurance policies. On May 26, 1898, it issued its policy of insurance on the life of Cora A. Williams, in favor of her husband, John W. Williams, the plaintiff in this case, for $1,000. Cora A. Williams died January 12, 1901, while the policy was in force. Due proof of death was given the defendant; in proper time payment was demanded, and refused. The petition alleges that the defendant has vexatiously refused payment, and prays judgment for the $1,000 and interest, 10 per cent statutory damages, and reasonable attorney's fee.

The answer admits the issuance of the policy, avers that on August 8, 1898, it lapsed for non-payment of premiums, on April 5, 1899, it was reinstated, on April 29, 1899, it again lapsed for non-payment of premium due, and on May 15, 1899, was again reinstated; it avers that when assured made application for the policy she imposed on the company by substituting an-

other woman in her stead to stand the medical examination, and also when she made the application for reinstatement of the policy after it lapsed she practiced the same imposition.

The answer then goes on to state that the policy sued on is on the assessment plan, and that it was issued in compliance with the written application of the assured and upon certain representations therein made and also made in her medical examinations, all of which she warranted to be true, and covenanted that the policy should be void if they were not true. These representations were to the effect that the applicant was in good health and had never been afflicted with certain diseases, among them consumption, that there was no consumption in her family, that her father died of paralysis at fifty years of age, also that there was no other insurance on her life, all of which representations the answer alleges were false and the policy was thereby rendered void. The reply put the averments of the answer in issue.

The evidence for the plaintiff tended to prove that the assured was in good health up to a short time before her death, that in the latter part of 1900 she became afflicted with a quick-consumption, and died in January, 1901.

The evidence on the part of defendant in reference to the fraudulent substitution of another woman for the medical examinations was that of the physician who made the examinations, and who at the trial was shown a photograph of the assured, and was asked if he recognized it as the photograph of the woman he examined; he said that he would not say that it was not a photograph of her because he might be mistaken, but he did not recognize it as her photograph.

He testified that on the occasions when he made the examinations he went to the home of the assured early in the morning without having made an appointment with her; he asked for Cora Williams, and a woman

there present answered to that name and he examined her. He also testified that the woman he examined was a healthy woman and that she signed the medical examination paper at the time and did not have before her the original application for the policy signed by her. There was some expert testimony to the effect that the signature to the original application and that to the medical examinations were not written by the same hand, but there was other expert testimony that they were written by the same hand. The only other testimony on that point was in an affidavit for a continuance which was to the effect that affiant expected to prove by one Catherine Buford, an absent witness, that she impersonated the assured and stood the medical examination in her stead, and plaintiff to avoid a continuance admitted that if she were present she would so testify. The affidavit for continuance did not state that Catherine Buford ever said that she had done so or what reason affiant had for expecting she would so testify. But when the affiant was afterwards on the witness stand he testified on cross-examination that one Rosie Kibby had told him so. There was on file an affidavit of Catherine Buford used on a motion for a continuance in a former trial of the case, in which she stated among other things that she had not been in St. Louis for nearly four years. The affidavit was admitted in evidence for the plaintiff over the objection of the defendant on the ground that it was competent to impeach the witness.

Testimony for defendant also tended to show that the assured was not a healthy woman when she took out the policy, but had been under medical treatment and that she had had a cough indicating consumption; also that at the time she took out the policy there was another policy on her life for $196. There was also evidence pro and con on the question of the defense being vexatious, and as to the amount of a reasonable attorney's fee for the plaintiff.

The above is a very brief summary of the oral evidence, but in the view of the policy as we interpret it and of the pleadings it is sufficient. The terms of the policy will be presently considered.

The cause was given to the jury on instructions by the court of its own motion to the effect that if they should find from the evidence that the policy in question had issued on the life of Cora A. Williams, that she died on January 12, 1901, that the premiums were paid and the policy in force at the time, that the plaintiff was the husband of Cora at the time of her death and due notice and proof of death had been given to the defendant, the plaintiff was entitled to recover $1,000 and six per cent interest from February 25, 1901, unless the jury should find from the evidence that in the application for the policy or in the medical examinations some representations as to the health or physical condition of the assured were made which were false and which concerned a matter which actually contributed to her death, or that some other person was substituted for the assured in the medical examinations, or that representations were made in the application or medical examinations either concerning other insurance on her life or concerning her health or previous condition or physical history or death of her father, or the health of her sister, or of medical attendance on herself, and that the representations were false and known by the assured to be false, in either of which event the verdict should be for the defendant. The instruction also authorized the jury if they should find for the plaintiff and should also find that the defendant had vexatiously refused to pay the loss, to add to the principal and interest damages not exceeding ten per cent and a reasonable attorney's fee.

The defendant asked a number of instructions, all of which were refused and which were, first, a peremptory direction to find for defendant, and then singling out the various alleged representations, in the applica-

tion and the medical examinations, directed the jury to find for the defendant if they found that either one of them was false. Exceptions to the giving and refusing of the instructions were taken.

There was a verdict for the plaintiff for the amount of the policy, $1,000, and six per cent interest, and $200 attorney's fee, total $1,359.50, and judgment accordingly, from which defendant appealed to the St. Louis Court of Appeals.

The circuit court construed this to be an old line policy, and instructed the jury on that theory. The St. Louis Court of Appeals took a different view and held it to be an assessment policy and reversed the judgment. But one of the judges of that court deeming the decision in conflict with the decisions of this court in Jacobs v. Omaha Life Assn., 146 Mo. 523, and Aloe v. Life Assn., 164 Mo. 675, the cause was certified to this court.

I. Defendant's theory of the contract of insurance sued on is that it was an assessment policy, and therefore section 7890, Revised Statutes 1899, providing that no misrepresentation made in obtaining a policy shall be deemed material or render it void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, is not applicable.

The defense was mainly along that line, but, except that the evidence showed that there was other insurance to the amount of $196 on the life of the assured, there was but little evidence to sustain the averments that any of the representations in the application and in the medical examiner's report were untrue and there was none to show a fraudulent purpose. As to the other insurance, it was taken out and paid for by the mother of the assured for her own benefit, and the mother testified that the assured did not know that it had been kept up. It was for a very small sum and the medical

examiner of defendant testified that if he had known it at the time he examined the assured for the policy in suit, it would have made no difference in his decision.

As to the alleged substitution of another woman to take the medical examinations, that was an unwarranted defense, and it justified the court in submitting the question of vexatious refusal to pay to the jury, and the evidence justified the jury in finding for the plaintiff on that issue. There was really no substantial evidence to sustain the charge. The physician who could not recognize the photograph was unwilling to say that it was not the photograph of the woman he examined, and that is all there was to sustain the charge unless we consider the statement made in the affidavit for a continuance as substantial evidence. We do not mean to detract from its weight as evidence that which a party in order to prevent a continuance admits that an absent witness would testify to; it is to be weighed as if the witness were present and so testified. But here was a witness who was to come on the stand and testify that she had been guilty of perpetrating this base fraud and that too in the face of her own affidavit on file in the case, saying that she had not been in the city for nearly four years, an affidavit not made to meet this charge, but made in reference to another matter, and made before there was any such issue in the case, before the answer had been so amended as to contain it. Then too it was shown in the evidence that the assured did not seek the defendant, but the defendant, through one of its agents, sought her and solicited her to apply for the policy, and when she let it lapse the agent again sought her and solicited her to reinstate it. She showed no anxiety either to take out the policy or to keep it alive, she yielded to solicitation. And when the examining physician called at her home to make the examination he gave her no warning of his coming, she did not know who it was when he

came, he called as a stranger would, asked for Mrs. Williams and she answered the call, then he told her who he was and she submitted to the examination.

The record shows that there were two trials of the case and it was a vigorous contest. The testimony shows that the amount awarded as attorney's fee was reasonable. There was no error in submitting the question of vexatious refusal to pay to the jury.

II. We come now to the main question in the case: Is this such a policy as that the defendant may avoid the payment of on the ground that the representations in the application or in the medical examiner's report were false? By the terms of the application for the policy it is declared that each and every one of those representations is warranted to be true and the policy recites that it is issued in consideration (among other considerations) of the statements and warranties contained in the application and the answers to the questions in the medical examiner's report. The instructions asked by the defendant were on the theory that if either of those representations was false the plaintiff could not recover. The court refused those instructions on the ground that it was an old line policy, and covered by the provisions of section 7890, Revised Statutes 1899. That section is as follows:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this State, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case, shall be a question for the jury."

By the terms of the policy it is declared that the defendant, in consideration of the representations and warranties above referred to and of the annual premium of $18.98 paid and to be paid on the 26th day of

May in every year, insured the life of Cora A. Williams in the sum of $1,000, payable to her husband, John W. Williams, if living at her death, and if not to her legal representatives.

There were several conditions expressed in the policy, of which the fourth and eighth are as follows:

"*Fourth.*—The insurance under this policy shall be that of '*non-participating term*' during the first two years it shall be in force and thereafter it shall be a '*whole life participating*' policy. The company agrees to set aside out of each annual premium paid hereon, after the second full policy year, the sum of two dollars and fifteen cents, and to hold the same as a reserve fund for the purpose of maintaining the emergency fund required by the laws of the State of Missouri. Any mortality in excess of the American Table of Mortality, shall be paid out of the emergency fund, and this policy, if in force, shall be liable for its share of any deficiency caused therein by such payment. Upon the determination by the board of directors of the amount of any such deficiency it shall be deemed assessed and deferred premiums, and the policy holder shall pay the same within thirty days after written notice to do so, or the company will accept from the policy holder a premium note therefor, upon the condition that interest thereon is paid annually in advance at the rate of five per cent per annum; the amount of any such note, with accumulated interest, shall be a lien against this policy, and be deducted therefrom in any settlement thereunder; provided, that no deficiency in the emergency fund shall be chargeable to this policy so long as the reserve fund, above provided for, is, with its accumulations, sufficient for its maintenance as required by law.

"*Eighth.*—In the event of the death of the insured while engaged in military or naval service, in time of war, or in consequence of a duel, or while in violation of the laws of any State or government, or at the hands

of justice, or while engaged in the occupation of electric lineman or railroad switchman, or as a result of the excessive use of alcoholic, spirituous or malt liquors or narcotics, or of travel or residence in the territory of Alaska, or by his (or her) own act or deed (whether sane or insane, voluntary or involuntary) within two years from the date hereof, the maximum liability of the company shall be the aggregate amount of the premiums actually paid to it under this policy; otherwise, when this policy shall have been in continuous force two years from its date it shall be thereafter incontestable except for non-payment of premiums or under-statement of age.''

It is under the fourth clause above quoted that the defendant contends that this is an assessment policy. The question what is a policy on the assessment plan is answered in our statute, section 7901, Revised Statutes 1899; it is one whereby the amount of the insurance ''is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts.''

In order to bring a policy within the purview of that statute it must show upon its face that the parties to the contract understood that the amount of money to pay the insurance promised was to be gathered in whole or in part by an assessment upon the holders of policies in the same class or category. In such case there is the implied, if not express, obligation on the part 'of the corporation to make the assessment and implied if not express understanding that there is a class of policy holders liable to assessment from which the amount can be gathered. There is nothing on the face of this policy that brings it within that purview. There is nothing to indicate that the parties to the contract understood that the payment of the insurance was to depend in whole or in part upon the success that

might attend an effort on the part of the corporation to raise the money by assessment imposed on its members.

The fourth clause of the policy shows that the price of the insurance was calculated on the American Tables of Mortality, and that out of the premiums collected after the first two years a certain sum would be laid aside each year to make the emergency fund required by section 7905, and that if conditions should come about so that the death rate should be in excess of that estimated in the American Tables an assessment may be made to meet such excess. There is nothing in that scheme providing for an emergency that makes the amount the defendant has contracted to pay under this policy dependent in whole or in part upon the collection of an assessment.

This interpretation of the policy follows the decisions of this court in previous cases of like policies. [Jacobs v. Life Ins. Co., 146 Mo. 523; Aloe v. Life Assn., 164 Mo. 675.]

We hold that this was not a policy on the assessment plan and that the circuit court was right in refusing all the instructions asked by the defendant on the theory that it was such a policy.

But if we should assume that it was an assessment policy, and that it was in force for two years, so as to bring it within the terms of the fourth clause above quoted, then by force of the eighth clause the whole affirmative defense must fall.

Although the statute regarding misrepresentations above quoted is not applicable to policies on the assessment plan (the writer of this opinion yielding, as in duty bound, to the decision of the majority of this court, in which however he was unable to concur as shown by his dissenting opinion in Aloe v. Life Association, 164 Mo. l. c. 690), still the terms of an assessment policy itself may make it incontestable on the same or similar grounds, and that is what this policy does in the eighth clause. By that clause the liability

of the defendant is limited to the aggregate amount of the premiums paid in case death occurs from several causes therein mentioned, none of which affects this case, and it concludes with these words: "Otherwise when this policy shall have been in continuous force two years from its date, it shall be thereafter incontestable except for non-payment of premiums or under-statement of age."

Therefore, if the defendant chooses to say the policy was in force two years and therefore became subject to assessment, it must abandon all other defenses except non-payment of dues or under-statement of age.

The circuit court took the correct view of this case, and the judgment of that court is affirmed.

All concur, except *Brace, P. J.,* absent.