ERNEST W. WALL, RESPONDENT, v. COMMONWEALTH CASUALTY COMPANY OF PHILADELPHIA, PA., APPELLANT.—39 S. W. (2d) 441.

Kansas City Court of Appeals. Opinion filed May 25, 1931.

*Hammett & Holman* for respondent.

*Hunter & Chamier* for appellant.

ARNOLD, J.—This is an action to recover upon a limited accident and sickness policy of insurance. Defendant is a corporation organized and existing under the law, with its home office at the City of Philadelphia, Pa., engaged in writing policies of insurance against loss of time by accident or sickness, and authorized to do business in the State of Missouri. Plaintiff is a resident of Clark in Randolph County, Missouri.

On May 19, 1928, in consideration of $10 premium to be paid annually, defendant issued its policy of insurance whereby it agreed to insure plaintiff, subject to all the provisions and limitations therein contained, against the effects of bodily injuries caused directly, solely and independently of all other causes, by external, violent and accidental means, which bodily injuries or their effects shall not be caused wholly or in part, directly or indirectly by any disease, defect or infirmity, and which shall from the date of the accident result in continuous disability, and also against sickness, as follows:

"If the insured shall be continuously confined within the house, not leaving it at any time or for any purpose whatsoever, and regularly visited therein at least once in every seven, days by a licensed physician and be wholly prevented from transacting any and every kind of business solely by abscess of brain (when operated upon) . . . boils (furuncle)," etc., etc., "not including their

complications and consequences, provided that this insurance shall have been in continuous force for thirty days from its date prior to the contraction of the disease, the company will pay for such confinement after the first seven days and not exceeding ten weeks a weekly indemnity of twenty-five dollars ($25)."

Another provision of the policy is as follows:

"If the insured shall carry with another company, corporation, association or society other insurance covering the same loss without giving written notice to the company, then in that case the company shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss and for the return of such part of the premium, paid as shall exceed the pro rata of the indemnity thus determined."

Suit on the policy was instituted July 16, 1930, before a justice of the peace in and for Sugar Creek township, Randolph County, Missouri, by the filing of a formal petition alleging the facts relative to the issuance of the policy; that the same had been in force thirty days from its date, as provided in said policy, prior to the contraction of the disease for which indemnity is claimed; that on Dec. 8, 1929, after said policy had been in force more than thirty days from its date, plaintiff was continuously confined within his house for more than four months, not leaving it at any time, or for any purpose whatsoever and was regularly visited therein, at least once in every seven days, by a licensed physician and wholly prevented from transacting any and every kind of business, solely by reason of said sickness, to-wit, boils; that the policy provided for payment to plaintiff the sum of $25 per week, not exceeding ten weeks consecutively, when so disabled; that plaintiff has done and performed all the things required of him by the terms of said policy; that defendant has denied liability and refused to pay plaintiff any sum whatsoever on account of said sickness and boils.

Defendant filed no pleading in the court of the justice of the peace. There was a trial to a jury resulting in a verdict in favor of plaintiff in the sum of $250. An appeal was taken to the circuit court of Randolph County where, on trial to a jury, plaintiff had judgment for $250. Motions for new trial and in arrest of judgment were overruled and defendant has appealed.

The first point demanding attention is respondent's point 5, in which he attacks the sufficiency of the bill of exceptions on the ground that "it does not show when the motion for a new trial and in arrest of judgment were overruled, and further, does not show that the affidavit and application for appeal were filed during the same term at which the motions for a new trial and in arrest of judgment were overruled," and asks dismissal of the appeal. No formal motion has been filed asking dismissal of the appeal upon

the grounds above mentioned. Such a motion, however, is not necessary where, as here, the matter was properly raised in respondent's brief and served within the time specified in the amendment to our rule 15, which provides:

"If in any case a respondent or defendant in error desires to question the sufficiency of appellant's or plaintiff in error's abstract of the record because it fails to show the timely filing or the overruling of the motion for new trial or in arrest of judgment, or that the ruling on any such motion was excepted to, or that the bill of exceptions was duly signed or filed, or that the appeal was duly taken, such objections and the reasons therefor shall be served in writing on appellant or plaintiff in error, or his counsel, ten days before the day on which the cause is docketed for hearing or within ten days after the abstract is served. Any such objections not so specified shall be deemed waived and will not be considered by the court."

The service copy of the abstract of record herein shows plaintiff acknowledged service of the same on February 9, 1931. The service copy of plaintiff's statement, brief and argument shows a receipt by defendant of copy of the same on February 21, 1931. The receipt therefor shows it was not served within ten days after the copy of the abstract of the record was served, as required by amendment to our rule 15, quoted above. However, the copy of plaintiff's statement, brief and argument, as shown by the receipt, was served more than ten days before the cause was docketed for hearing, to-wit, March 4, 1931. The question, therefore, is properly before us for consideration.

An examination of the bill of exceptions shows plaintiff's objections good as to that instrument. It is noted the record proper recites:

"And, thereafter, to-wit, on the 12th day of November, 1930, and during said October Term, 1930, of said court, and within four days after the rendition of said verdict, and the entering of said judgment in said cause, appellant duly filed its motion for a new trial and on the same day and date, November 12, 1930, appellant duly filed its motion in arrest of judgment, which motions are hereinafter set forth in the bill of exceptions. And on December 8, 1930, and during said October Term, 1930, the court overruled said motion for new trial and during said term, on defendant's affidavit therefor, granted defendant an appeal to the Kansas City Court of Appeals, with leave to file its bill of exceptions within the time allowed by statute and fixed its appeal bond in the sum of $750, which bond was duly filed and approved."

This shows a timely filing of motions for new trial and in arrest of judgment, and that they are set forth in the bill of exceptions. The record also shows the timely overruling of the motion for new trial, but there is no showing that the motion in arrest was over-

ruled; the bill of exceptions shows the overruling of this motion without showing the date of such action. A similar situation is discussed in the case of Stid v. Railway Company, 211 Mo. 411, 100 S. W. 663, an opinion by LAMM, J. The record in that case, as here, showed motions for new trial and in arrest were duly filed, on the same day; the bill of exceptions (as here) showed exceptions were duly saved to the overruling of both motions. The court said, l. c. 413:

"If . force be given to that part of the record preserved in the bill of exceptions the motion in arrest was overruled at the same time as the motion for a new trial, and exceptions were saved to overruling both."

As to motions in arrest, the court further said, l. c. 415:

"Speaking with precision, a motion in arrest is not a motion for a rehearing. If granted, it does not necessarily result in a new trial. If an amendment be allowed, the cause by statutory command proceeds 'according to the practice of the court.' [Revised Statutes 1899, Sec. 904.] When we consider the limited and humble office of a motion in arrest in the light of the authorities cited, it can be seen to be no *essential* element in an appeal. It is a not infrequent practice to appeal without one. The most to be said of such a motion is that, if one be not filed and passed upon by the trial court, an appellate court will not consider matter of error to which the trial court's attention could only be called by a motion in arrest."

We hold, therefore, that though the record in the case at bar is somewhat irregular, yet this irregularity is not sufficient to deprive defendant of the right to have its appeal considered. An appeal is a child of statute, its object being to arrive at the right of the cause, and statutes pertaining to procedure are entitled to liberal construction. [Stid case, supra.] We rule this point against plaintiff.

Passing now to the appeal on its merits, we find there are seven assignments of error presented and argued under six headings in points and authorities, the first of which is to the effect the rule in Missouri is that where the language in an insurance policy is plain and unequivocal, there is no room for construction and the words must be given their usual and natural meaning. Opinions are cited holding to this effect. That this is a correct statement of the law is not disputed. Neither is there any dispute that the policy sued on is a limited one, covering certain diseases only, all of which are named in the policy. It is concluded if plaintiff was disabled from any disease named in the policy, he is entitled to recover; but if he suffered from a disease not named therein, he is not entitled to its benefits.

It is argued by defendant that the testiminy shows plaintiff was afflicted with tularaemia, an infectious disease caused by *bacterium tularense*, and transmitted to man, among other ways, by contamina-

tion of his hands with portions of the internal organs or body fluids of infected animals. Cases of this infection occur from skinning and dressing infected rabbits. The primary lesion is a pimple, later an ulcer, accompanied by enlargement of the lymph glands which proceed to suppuration and sometimes rupture of the skin.

The testimony shows that in November, plaintiff went hunting and killed some rabbits which he skinned. He was taken sick on December 4, and called a doctor on December 8. In the preliminary notice of illness sent defendant as a basis for his claim, in answer to the question as to the disease causing his disability, plaintiff answered "tularaemia, abscess and boils, swollen joints and glands." His attending physician in the "Physician's Preliminary Report of Illness" named tularaemia, and in answer to the question, "Has he any others?" answered "abscess and boils." The doctor also stated there was a "diagnosis blood test sent to Washington, D. C." In answer to the request to describe the symptoms leading to the diagnosis, he said "Chills, swollen joints and glands, abscesses and boils that would not heal." Similar statements were made by plaintiff and his physician in his claims presented for benefits in two other companies in which he carried policies. In proving up on one of these policies, i. e., the Business Men's Assurance Company of America, an accident concern, the doctor's certificate stated plaintiff had tularaemia (Rabbit Disease) and that the injury was sustained by "skinning rabbits."

Defendant points out that as to the payment of sick benefits, the policy specifically provides:

"If the insured shall be continuously confined within the house, not leaving it at any time or for any purpose whatsoever, and regularly visited therein at least once in every seven days by a licensed physician and be wholly prevented from transacting any and every kind of business solely by abscess of brain (when operated upon) . . . boils (furuncle) . . . and yellow jaundice, not including their complications and consequences."

Upon this clause in the policy and based upon the evidence heretofore indicated, it is argued plaintiff is not entitled to recover, and the court erred in refusing defendant's peremptory instruction offered at the close of all the evidence.

If the evidence showed plaintiff suffered from no disease other than tularaemia, of course defendant's position would be sustained; but that is not the case. Plaintiff agrees with defendant that the policy sued on was a limited policy, covering only the diseases named therein, but says the policy covers "boils" and goes further and uses the explanatory term (furuncle). Plaintiff contends furuncle is a broader term than boils; that Webster defines it as an "inflammatory tumor," which would seem to cover any tumor or abrasion of the skin which is inflammatory or suppurating. There is substantial

evidence of record that plaintiff was suffering from boils prior to the time he skinned the rabbits and that this condition confined him to his home for a period of over ten weeks.

It is plaintiff's position that there is some evidence in the record that at some time during the period of his confinement to his house, he was suffering from tularaemia, but that the question as to whether he suffered from boils, as specified by the terms of the policy, was the one submitted to the jury. In this position plaintiff is right. There was presented a question of fact for the jury. It is the law, that insurance contracts susceptible of two meanings, one broadening the scope of insurer's liability and the other narrowing it, should be given the interpretation most favorable to the insured. [Kempf v. Life Ins. Co., 184 S. W. 133; Schmohl v. Ins. Co., 189 S. W. 597; Landrigan v. Ins. Co., 245 S. W. 382; Bothmann v. Life Ins. Co., 252 S. W. 652.] It is defendant's position that the testimony must show plaintiff was confined to his house and unable to transact any and every kind of business solely by "boils (furuncle)."

The policy does so provide, but the testimony is capable of being construed by the jury as fully meeting the demands of the policy. We cannot pass on the weight of the evidence, and, in the state of the record, we may not say, as a matter of law, that defendant's instruction in the nature of a demurrer should have been given. Defendant properly insists courts do not have the right to enlarge upon the plain provisions of a policy, nor make an insurance contract contrary to the express agreement of the parties thereto. This plain statement of the rule may be refuted but, as applied to the situation here presented, the rule is not effective. Reduced to the last analysis, the case presents the following features: Defendant insists tularaemia is the fundamental disease from which plaintiff suffered and that the so-called boils from which he suffered were complications and consequences of the tularaemia and not covered by the policy. Plaintiff claims the boils (furuncle) from which he suffered were the basic ailment and that tularaemia was not the primary or contributing cause of his confinement. The jury has accepted plaintiff's view in this respect and given him a verdict. We shall not disturb their finding.

Defendant complains the judgment is excessive as defendant is liable, if at all, only in such portion of the indemnity promised as it bore to the total amount of like indemnity; that plaintiff carried other insurance which was taken out without giving defendant notice thereof. It is argued the provisions of an insurance policy voiding it for additional insurance without the insurer's consent and indorsement on the policy are valid. [Cases are cited in support of this proposition.]

Plaintiff urges this position is contrary to the statute requiring policies to specify "the exact sum of money payable upon happening

of the contingency sued against.'' [Secs. 5747 and 5768, Revised Statutes 1929.] Sec. 5747 provides:

''Every policy or certificate hereafter issued by any corporation of this state doing business in conformity with the provisions of this article, and promising a payment to be made upon a contingency of death, sickness, disability or accident, shall specify the exact sum of money which it promises to pay upon each contingency insured against, and the number of days after satisfactory proof of the hap pening of such contingency at which such payment shall be made, and upon the occurrence of such contingency, unless the contract shall have been voided for fraud or breach of its conditions, the corporation shall be obligated to the beneficiary for such payment at the time and to the amount specified in the policy or certificate;'' The article of the policy to which this section applies is entitled ''Insurance on the assessment plan'' and sec. 5768 applies to any and all corporations doing business in this State under the provisions of the act.

A policy clearly indicating that payments necessary to continue the same are to be collected wholly or in part from assessments on holders of certificates of like class is one upon the assessment plan. One providing for a fixed, regular premium is held to be an old line policy. [Lee v. Ins. Co., 303 Mo. 492, 261 S. W. 83; Williams v. Ins. Co., 189 Mo. 70, 81, 87 S. W. 499; Ficklin v. Ins. Co., 205 Mo. App. 452, 225 S. W. 102.] To bring a policy within this section, it must show on its face an understanding that the insurance was to be gathered by assessments. [Williams v. Ins. Co., supra.] It is also held policies for a fixed and limited annual premium are not on the assessment plan. Section 17 of the policy herein provides:

''If the insured shall carry with another company, corporation, association or society other insurance covering the same loss without giving written notice to the company, then in that case the company shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss and for the return of such part of the premium paid as shall exceed the *pro rata* of the indemnity thus determined.''

During the progress of the trial the parties stipulated as follows:

''It is admitted by the parties hereto, that the plaintiff, without giving written notice to defendant, carried, from November 1, 1929, to March 1, 1930, a policy of insurance with the Business Men's Assurance Company of Kansas City, Missouri, which provided for an indemnity of $25 for one year, and also with the Mutual Benefit Health and Accident Association of Omaha, Nebraska, which provided for an indemnity of $15 a week during total disability, each of such policies covering the same loss covered by the policy herein.''

Based upon the foregoing provisions of the policy and the stipulation referred to, defendant insists the verdict is excessive and the court erred in refusing its proffered instructions 5, 6, and 7, which sought to tell the jury defendant was liable only for its proportional part of the insurance carried, if the jury found the facts otherwise to support plaintiff's claim. We hold defendant is right in this contention and that the court erred in not instructing the jury on the question of *pro rata* indemnity, but this error may be cured by *remittitur*, under the provisions of the stipulation above quoted and section 17, of the policy. The judgment is excessive in the sum of $152.65. Plaintiff is entitled to recover in his action $96.15, the pro rata share of the total indemnity, plus $1.20 unearned premium. Therefore if, within ten days from the filing of this opinion, plaintiff shall enter a *remittitur* of $152.65, the judgment will be affirmed for $97.35; otherwise it will be reversed and the cause remanded for a new trial. *Bland, J.,* concurs; *Trimble, P. J.,* absent.