## MASSACHUSETTS BONDING & INS. CO. v. SANTEE.

### No. 6900.

Circuit Court of Appeals, Ninth Circuit.

Jan. 9, 1933.

Jas. A. Williams, of Spokane, Wash., for appellant.

La Berge, Cheney & Hutcheson, Harry A. La Berge, Joseph C. Cheney, and Elwood Hutcheson, all of Yakima, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This action was commenced by the appellee to recover the proceeds of a $7,500 accident insurance policy issued by appellant to Charles L. Santee, deceased. The policy insured "against bodily injury sustained during the life of this policy directly and independently of all other causes through accidental means."

The insured died on September 15, 1931, during the life of the policy in suit. The complaint alleges, and the answer admits, that the death of the insured was caused by gunshot wounds inflicted about an hour previous to his death by a revolver fired by one W. B. Mahan. Mahan and his wife were the only witnesses to the killing, and they both

refused to testify in regard to the shooting, on the ground that their testimony might tend to incriminate them. There was no evidence, therefore, regarding the circumstances surrounding the insured's death. However, it was conceded that the injuries which caused the death were external and violent, and the issue was whether death occurred "through accidental means."

It was stipulated that the jury be discharged. Both sides moved for a directed verdict, and the court ruled in favor of the appellee. Appellant concedes that "there were no controverted questions of fact, and the questions involved were purely ones of law"; but it is urged that the court erred in denying appellant's motion for a directed verdict in its favor and in entering judgment for the appellee, because, under the circumstances, there is no presumption of law that death occurred through accidental means. Appellee, on the other hand, maintains that the uncontradicted evidence and admissions in the pleadings established a prima facie case, as ruled by the trial court; "that the evidence having established death through external and violent means as the direct result of gunshot wounds not self-inflicted, the legal presumption that such death was therefore due to accidental means squarely applies, and there being no evidence on the part of defendant [appellant] to rebut this presumption * * * the appellee's motion for directed verdict and judgment was properly granted."

 The ruling on the motion for directed verdict was correct.

In Mutual Life Ins. Co. of New York v. Sargent (C. C. A. 5) 51 F.(2d) 4, 5, the court said: "Upon the matter of proof it is the law, though there are one or two authorities contra [New York Life Ins. Co. v. Ollich (C. C. A.) 42 F.(2d) 399, 401], that while the burden is upon plaintiff in cases of this kind to prove death resulting from external, violent and accidental means, proof without more that insured was killed by another raises the presumption that death was accidental, and makes out a prima facie case in the absence of evidence to the contrary. Smith v. New York Life Ins. Co. (C. C. A.) 31 F.(2d) 281; Nerrow v. Pacific Mutual Life Ins. Co. (Mo. App.) 294 S. W. 97, 99; Withers v. Pacific Mutual Life Ins. Co., 58 Mont. 485, 193 P. 566; Aetna Life Ins. Co. v. Rustin, 151 Ky. 103, 151 S. W. 366; Jones v. U. S. Mutual Acc. Ass'n, 92 Iowa, 652, 61 N. W. 485; Aetna Life Ins. Co. v. Little, 146 Ark. 70, 225 S. W. 298."

"The burden of proof was on appellant to show that the death of the insured resulted from bodily injury effected through external, violent, and accidental means. It being admitted by the pleadings that the insured was killed by another, it necessarily follows that his death was caused by external and violent means. Without further proof, a presumption arose that death was accidental. 1 C. J. 495." Smith v. Mutual Life Insurance Co. of New York (C. C. A. 5) 31 F.(2d) 280, 281.

"In the absence of evidence to the contrary, the law presumes that Jones [the insured] was without fault. There was no direct testimony to show that Wade, in firing the shot, had any intent to injure or kill Jones. Then the presumption which the law raises where one had been killed by external and violent means, as in this case, that the injury was the result of accident, will prevail until overcome by evidence. [Citing cases.]" Jones v. Accident Association, 92 Iowa, 652, 61 N. W. 485, 487.

"The plaintiff made out a prima facie case when she introduced proof establishing the death of Martin [the insured] by external and violent means. [Citing cases.] The proof of death by such means raised a presumption that the insured's death was accidental, and this presumption was not destroyed by the fact that her evidence showed that Martin was 'killed' by Dr. Brannon." Martin v. Mutual Life Ins. Co., 106 W. Va. 533, 146 S. E. 53, 56.

See, also, Killingsworth v. Ætna Life Ins. Co. (D. C.) 49 F.(2d) 399, same case on appeal, Ætna Life Ins. Co. v. Hagemyer (C. C. A. 5) 53 F.(2d) 636, certiorari denied 285 U. S. 542, 52 S. Ct. 314, 76 L. Ed. 934; Withers v. Pacific Mut. Life Ins. Co., 58 Mont. 485, 193 P. 566; Schmohl v. Ins. Co. (Mo. App.) 177 S. W. 1108; Id., 266 Mo. 580, 182 S. W. 740; Id. (Mo. App.) 189 S. W. 597 and Id. (Mo. Sup.) 197 S. W. 60; Carpenter v. Iowa State Traveling Men's Ass'n, 213 Iowa, 1001, 240 N. W. 639; Linnen v. Commercial Casualty Co., 152 S. C. 450, 150 S. E. 127; and Tabor v. Commercial Casualty Ins. Co., 104 W. Va. 162, 139 S. E. 656, 657, 57 A. L. R. 968, 971, where it is said: "The rule of law is well established, that in the absence of a provision in an accident policy relieving the insurer in such case, the latter is liable where the insured is intentionally killed or injured by another, and the injury is not the direct result of misconduct or an assault by the insured, but is unforeseen in so far as he is concerned, and that

the injury so inflicted is accidental within the meaning of such policy. [Citing cases.]"

See, also, Missouri State Life Ins. Co. v. Roper (C. C. A. 5) 44 F. (2d) 897.

With the rule that the right of recovery only exists where "the injury is not the direct result of misconduct or an assault by the insured," we are not concerned, because in the case at bar there was no such proof or any evidence at all as to the circumstances surrounding the insured's death; simply the bare admission that the insured was killed by a certain third person.

It is also contended that "the court erred in denying appellant's motion that the court rule as a matter of law that if there was a recovery permitted the appellee, it be limited to the pro-rata amount as provided by Clause 17 of the policy of insurance." That clause is as follows: "17. If the insured shall carry with another company, corporation, association, or society other insurance covering the same loss without giving written notice to the Company, then in that case the Company shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro-rata for the indemnity thus determined."

Chapter 124 of the Laws of Washington, 1929, pp. 291, 292, relating to accident and health insurance, among others, provides that:

"15. * * * No such policy shall be so issued or delivered which contains any provision * * * (2) limiting the amount of indemnity to a sum less than the amount stated in the policy and for which the premium has been paid; * * * unless such provisions which are hereby designated as optional standard provisions, shall be in the words and in the order in which they are hereinafter set forth, but the insurer may at its option omit from the policy any such optional standard provision. Such optional standard provisions if inserted in the policy shall immediately succeed the standard provisions named in this section. * * *

"(2) An optional standard provision relative to reduction of the amount of indemnity to a sum less than that stated in the policy as follows:

"17. If the insured shall carry with another company, corporation, association. or society other insurance covering the same loss without giving written notice to the insurer, then in that case the insurer shall be liable only for such portion of the indemnity promised as the said indemnity bears to the total amount of like indemnity in all policies covering such loss, and for the return of such part of the premium paid as shall exceed the pro rata for the indemnity thus determined."

"Although provisions for prorating in case of other insurance are common in fire insurance, provisions of this character seem to have found their way into accident insurance only within recent years." Couch on Insurance, vol. 7, § 1879.

At the time of his death the insured carried another accident policy in the Sentinel Life Insurance Company. Both policies covered loss of life by accidental means. The learned trial court held that there could not be an apportionment of a loss arising out of the death of a human being, and declined to give effect to section 17 of the policy on the prorating basis. We are of opinion that this was error. The Washington statute expressly authorizes the insertion of section 17 in the policy, and since it is not against public policy it is as binding upon the contracting parties as any other provision of the contract. The meaning of the section is plain, and we can see no good reason why it should not be enforced. This prorating provision of the contract could easily have been avoided by the insured by simply giving notice of the existence of the other policy.

A similar question arose in the case of Dustin v. Interstate Business Men's Accident Ass'n, 37 S. D. 635, 159 N. W. 395, 397, L. R. A. 1917B, 319. It was there contended that such a provision in an accident insurance policy was against the public policy of the state, and for that reason void; but the court held that paragraph 16 of the policy (identical with paragraph 17 of the policy in the instant case) "is not contrary to any law, nor is it immoral and, unless it is contrary to public policy, it must be given effect." Also: "We are satisfied that the language used is broad enough to include any other accident insurance, whether the same was in force at the time the application was made or was issued thereafter, and that the decedent could not have misunderstood or have been misled by the language used, and that the clause in question is not void for ambiguity."

Again:

"Under the terms of the provision, the issuance of additional insurance without the giving of the notice therein provided for automatically reduces the amount of the insur-

ance. If the notice is given, the liability is not affected by the additional insurance unless the company chooses to exercise its option to return the unearned premium and cancel the policy. The only reason that is suggested why a policy shall be canceled under these circumstances is the danger of liability on account of self-inflicted injuries where persons have been allowed to carry excessive accident insurance. In other words, that the element of moral hazard is involved in accident insurance. The provision guarding against moral hazard in standard fire insurance policies has been upheld by this court. Hronish v. Home Ins. Co., 33 S. D. 428, 146 N. W. 588, and is, we believe, upheld by courts in general. While it is true that the element of moral hazard is not involved in accident insurance to the same extent as in fire insurance, it cannot be denied that there is some additional risk on account of self-inflicted injuries in case of accident insurance, and that the element of moral hazard does exist. No reason has been shown why the parties to an accident insurance policy may not guard against this risk by contract; and, if the contract has been fairly entered into, it ought to be enforced.

"The case involves no question of public policy. It is purely a question of the right to enter into the agreement contained in the policy. The decedent failed to give the notice provided for in the policy, and defendant's liability was reduced as therein provided."

The Dustin Case was followed in Anderson v. Interstate Business Men's Accident Ass'n, 38 S. D. 105, 160 N. W. 522.

In Graham v. Business Men's Assur. Co. of America (C. C. A. 10) 43 F.(2d) 673, 674, this same section 17 of the standard provisions of a similar policy was before the court. It was there contended that the provision was in conflict with a certain section of the session laws of Oklahoma which prohibits an insurance company from issuing any policy which does not distinctly state the amount of benefits payable, the manner of payment, and the consideration therefor. The court said: "The policy sued on distinctly states the benefits payable; it is true the amount payable may be reduced by taking other insurance without notice, but even the reduced amount is definitely ascertainable by a simple computation. The purpose of the statute is to enable the insured to tell exactly how much insurance he is buying, and to protect him against contracts that promise to pay a sum not presently ascertainable, as, for example, an amount to be determined by assessments thereafter to be made. The statute

is not aimed at, nor does it cover, provisions which reduce the benefits in an ascertainable amount in event the age of the insured is misstated, or in event he engages in a more hazardous occupation, or takes additional insurance. The insured, under the policy in question, and with his own knowledge as to the insurance he carries, knows exactly the amount of benefits payable at any time. Southern Travelers' Ass'n v. Boyd (Tex. Com. App.) 12 S.W.(2d) 183. The policy is not in conflict with the quoted statute."

It was there contended, as it is here, that the provision applies only to loss of time and not to loss of life; but the court said: "The second contention of plaintiff is that the provision applies only to loss of time and not to loss of life. Plaintiff argues that the reason for the provision is to protect the company against malingerers; that men might feign injury to collect large indemnities for loss of time, but do not feign death for that purpose. But, where language used by the parties is clear, courts are not justified in ignoring it, however plausible the reasons advanced. The contract in question repeatedly speaks of 'indemnity for loss of life.' In fact, the agreement to pay in case of death is referred to as an 'Indemnity for Loss of Life Payable to the Beneficiary.' Clause 17 provides that, in case of additional insurance, the company 'shall be liable only for such portion of the indemnity promised,' etc. The trial court was correct in declining to eliminate from clause 17 the indemnity payable for loss of life."

It is true the case was reversed, but on another ground, not here material.

In the case of Aaberg v. Minnesota Commercial Men's Ass'n, 161 Minn. 384, 201 N. W. 626, 628, the court was called upon to construe section 17, and, among other things, said: "The statute does not frown upon additional accident insurance, but gives the insurer an option to insert in the contract or policy the provision quoted. That provision penalizes the insured only when he carries such additional insurance without giving written notice to the insurer. * * * Under our statute the failure to give written notice of the additional insurance bears on the amount of the liability of the first insurer."

This language was used by the court in a case involving the timeliness of the notice of taking out additional insurance.

Section 17 was also involved in the case of International Travelers' Ass'n v. Gunther, 280 S. W. 172, 173, where the Commission of Appeals of Texas said: "This article provides

that the corporation shall be liable for the full amount stated in the policy, 'subject to such legal defenses as it may have against same.' The word 'same' here used refers to and means the sum of money specified. There is nothing in this article to indicate that the parties to the contract of insurance may not make and stipulate in the contract a provision that a failure of the insured to give written notice of other insurance covering the same loss should defeat a recovery under the policy either in whole or in part, and prevent such stipulation from furnishing a legal defense to a recovery under the policy, or to a recovery of a portion of the sum of money specified therein."

See, also, McConathy v. North American Accident Insurance Co., 14 La. App. 27, 129 So. 238; Wall v. Commonwealth C. Co. of Philadelphia, Pa., 225 Mo. App. 657, 39 S. W.(2d) 441; Satterfield v. Inter-Ocean Casualty Co., 159 Tenn. 531, 19 S.W.(2d) 229, 230. In the latter case, the court said: "The obvious and only purpose of the provision for notice is that the insurer may have knowledge of the fact of other insurance, and with such knowledge determine whether it will cancel its policy after the expiration of the period for which it has accepted a premium."

There the question was whether or not the second application for insurance by the insured had been accepted; but it is interesting to note that the Supreme Court of Tennessee at least assumed that section 17 was a valid provision of the contract of insurance.

We have examined the case of Wahl v. Inter-State Business Men's Acc. Ass'n, 201 Iowa, 1355, 207 N. W. 395, 50 A. L. R. 1374, relied upon by appellee. We think that case is not in accordance with the weight of authority.

We think appellant's other specifications of error are without merit.

■ Since a jury was waived, and it is admitted that there were no controverted questions of fact, and the questions involved were purely ones of law, there is no occasion for a new trial. Howbert v. Penrose (C. C. A. 10) 38 F.(2d) 577, 68 A. L. R. 820; Graham v. Business Men's Assur. Co. of America (C. C. A. 10) supra, 43 F.(2d) 673.

. The judgment of the trial court is reversed, with instructions to enter judgment for appellee, limited, however, to the pro rata amount of the policy as provided by clause 17 thereof. Costs on this appeal, not including attorney's docket fee, to be equally divided between appellant and appellee.